WESTERN COAL & MINING COMPANY *v.* RANDOLPH.

4-4072

Opinion delivered January 13, 1936.

*Pryor & Pryor,* for appellant.

*G. C. Carter* and *Partain & Agee,* for appellee.

BUTLER, J. Independent suits were filed against appellant by several plaintiffs, and these cases were consolidated for the purpose of trial. Plaintiffs were owners of small tracts of land in and near the vicinity of the town of Denning in Franklin County. These properties joined, or lay close to, each other. Underlying was a

vein of coal owned by the appellant. Suit was brought for damages to the strata overlying the vein of coal on the allegation that in the years 1931 and 1932 the appellant, in mining operations, failed to leave sufficient support, thereby causing the surface of the land to crack and settle, the effect of which was to drain the underground streams of water which supplied plaintiff's wells. The trial of the case resulted in a verdict and judgment in favor of each of the plaintiffs.

On appeal, the assignments of error preserved and argued will be noticed in the order of their presentation in appellant's brief.

It is insisted that there should have been a directed verdict as requested because (a) the proof conclusively shows that the mine was not operated by the appellant in the years 1931 and 1932 as alleged; (b) that the evidence failed to establish that the injury to appellees' wells was the result of the mining operations; (c) that the subsidence was not on the tracts of land owned by the appellees; (d) that the proof failed to show that the wells were fed by underground streams and not by percolating waters; and (e) that the proof affirmatively shows that the action was barred by the statute of limitations.

(A) As to when the mining operations were conducted under, and in the vicinity of, appellees' land, the proof introduced on their behalf is indefinite and unsatisfactory, but it conclusively appears from proof introduced on behalf of the appellant that the operations were finished during the years 1928 and 1929, and during the latter year the pillars of coal left to support the roof were mined and withdrawn. That the plaintiffs (appellees) were mistaken as to the years in which the mining operations were being conducted is of no consequence. The important and controlling questions are, first, did those operations cause the damage? and, second, when did that damage occur? It is contended that after the year 1929 the mining operations were conducted by a lessee of appellant over whom no right of supervision was reserved, and that therefore appellant (lessor) is not responsible for damage resulting from the mining operations of said lessee. We need not consider the rela-

tion of lessor and lessee or the effect of the written lease introduced in evidence, because, from the proof introduced on behalf of appellant, the coal under the properties of appellees, and the lands adjacent thereto, had been removed prior to the time when the lessee began its operations.

(B) On the question of damage to the wells of appellees, the evidence is in direct and irreconcilable conflict. On behalf of appellees there is substantial evidence to show that the surface settled in the immediate vicinity and on three sides of their properties and the strata overlying the coal mines cracked in September, 1932. Before that date the wells afforded an abundant supply of pure and wholesome water, and immediately after the disturbance of the strata overlying the mines the water became so depleted that it was not sufficient for household purposes, and appellees were obliged to depend on the wells of their neighbors. The evidence on the part of appellant strongly disputes this and tends to show that the wells continued to afford an abundant supply of water. This dispute in the testimony of the witnesses presented a question of fact for the jury, the judgment of which, under settled principles, we are not at liberty to disturb.

(C) It appears that the disturbance to the strata overlying appellant's mine did not actually occur on the tracts of land owned by the appellees, but liability for damage for this reason cannot be avoided because, in the recent case of *Western Coal & Mining Company* v. *Young,* 188 Ark. 191, 65 S. W. (2d) 1074, the appellant in the case at bar being the appellant in that case, this court held that it was liable in damages under facts practically identical with those in the case at bar—that is, the subsidence did not occur on the land of the party plaintiff, but on adjoining land which resulted in the draining of plaintiff's well. In *Western Coal & Mining Company* v. *Young, supra,* the result reached seems to find support in the conclusion of the author in Lindley on Mines, vol. 3, page 2030, § 832. The distinction between liability for lack of adjacent support to land in its natural state and for damage to structures erected thereon

is pointed out in *Gilmore* v. *Driscol*, 122 Mass. 199, 23 Am. Rep. 312, for the former, damages are recoverable without proof of actual negligence; for the latter, negligence must be established.

(D) It is the theory of appellant that the wells were not shown to have been fed by underground streams, and, in the absence of such proof, the presumption would be that they were fed by percolating waters for the interception of which appellant, in its mining operations, would not be liable. 18 R. C. L. 1241; 3 R. C. L. Supp. 907. We are of the opinion, however, that there is substantial evidence to show that the wells were fed by underground streams. Several witnesses testified that the flow was so abundant it was with difficulty that the water was drawn out and reduced sufficiently to allow the wells to be cleaned, and that when the water in them was reduced the sound of running water could be heard.

(E) The evidence makes it fairly certain that the removal in 1928 and 1929 of the pillars which had been left in the mine was the cause of the subsidence of the surface in September, 1932, and that this subsidence resulted in the damage which appellees sought and recovered.

The real important question in this case is, when did the cause of action of the appellees accrue? It is insisted by the appellant that it accrued in 1928 or 1929 at the time the supports were removed from the mine. This court, in *Western Coal & Mining Co.* v. *Young, supra,* aligned itself with the great weight of authority holding that the absolute duty to provide for supports sufficient to prevent a subsidence of the surface rested with the mining company. Therefore the contention is made that the action accrued and the statute of limitations began to run from the date this duty was breached. To support this contention, the recent case of *Field* v. *Gazette Publishing Co.,* 187 Ark. 253, 59 S. W. (2d) 19, is cited, and also the cases of *St. L. I. M. & So. Ry. Co.* v. *Morris,* 35 Ark. 622; *Fordyce* v. *Stone,* 50 Ark. 250, 7 S. W. 129, and *Griffin* v. *Dunn,* 79 Ark. 408, 96 S. W. 190. The Field case was an action for personal injuries where it was shown that facts relating to the injury

were as well known to the plaintiff as to the defendant and therefore, under the general rule, the action accrued and the statute of limitations began to run from the date the injury was sustained, although the results were not then fully developed. The cases of *St. L. I. M. & So. Ry.* v. *Morris* and *Fordyce* v. *Stone, supra,* were for damages caused by the construction of a permanent levee or embankment, the consequences of which were ascertainable from the date of construction and the damages were such as could be recovered in a single action. In that state of case it was held that the cause of action accrued and limitations began to run from the date of the building of the levee or embankment. *Griffin* v. *Dunn, supra,* involved the question of the accrual of the right of action of the heir to recover a homestead upon the termination of the particular estate. Those cases are distinguishable, however, from cases which, like the one at bar, involve damages for the subsidence of surface land because of the removal of supports in underlying mines. The reason is that in the cases relied upon by appellant the cause of the injuries was immediately apparent, whereas in cases like the instant one the removal of the supports might not be known to, or discoverable by, the owners of the surface until the subsidence revealed this fact. It is therefore the general rule established by the clear weight of authority that the cause of action arises only when the subsidence occurs and the surface proprietor may bring his action for the injury at any time within the statutory period after the injury to the surface occurs, irrespective of the date of the removal of the supports. 3 Lindley on Mines (3d ed.) 2016, § 823; *West Pratt Coal Co.* v. *Dorman,* 161 Ala. 389, 49 So. 849, 25 L. R. A. (N. S.) 805, and case-note.

The appellant lastly contends that it was prejudiced by the argument of appellees' counsel made to the jury relating to a lease of the Consolidated Sales Company. The objection was that the Consolidated Sales Company lease is not involved in the instant proceeding. The court overruled the objection, and that action of the court is one of the errors assigned. The argument was unnecessary for the reason that, under the same evidence

as was given in the case at bar, this court, in *Western Coal & Mining Co.* v. *Young, supra,* held that the appellant was responsible for the acts of the Consolidated Sales Company. The other argument objected to was to the effect that appellant was shifting from one paper corporation to another in order that it might avoid liability for its conduct in its mining operations. The court sustained the objection to this argument. There was therefore no prejudicial error.

The evidence in the instant case discloses that the mining operations and the removal of the supports was done by the Consolidated Sales Company. This was the same company and the same operation involved in the case of *Western Coal & Mining Company* v. *Young, supra,* where it was held that the mining company was responsible for injuries resulting from the operations of the Consolidated Sales Company. That decision controls and makes necessary an affirmance of the judgment in the case at bar. It is so ordered.