BARKSDALE v. SILICA PRODUCTS COMPANY.

4-5823 137 S. W. 2d 901

Opinion delivered March 11, 1940.

*John C. Ashley* and *Sizer & Myres,* for appellant.

*Allen McReynolds* and *Dene H. Coleman,* for appellee.

SMITH, J. Appellant contracted the occupational disease of silicosis while employed at appellee's silica mine, and he brought this suit to recover damages on that account. At the conclusion of the plaintiff's testimony the court directed the jury to return a verdict in favor of the defendant, which was done, and this appeal is from the judgment rendered on that verdict.

The statement of the trial court in directing this verdict substantially states the issues in the case, from which we quote as follows:

"It is apparent from the testimony introduced on the part of the plaintiff, that the plaintiff was working as an employee of the defendant in an occupation which was necessarily dangerous. It was an occupation which is generally known to be dangerous, and it was a line of work with which the plaintiff was familiar, having commenced work about 1929, and intermittently for awhile and then regularly up to 1938, there being times

during that period of time that he didn't work regularly. He alleges negligence in the failure to furnish respirators of the approved standard.

"He has failed to show that in similar lines of work it is customary for employers to use respirators different from the ones used. It is true that there has been evidence that in one place a different respirator is used, but the evidence on the part of the plaintiff is that in certain mining districts respirators similar to the ones used at this plant were used, and a defendant is not bound to do anything except to use ordinary care to furnish safe appliances with which to work. They are not bound to use the most up-to-date and latest invented appliances, but it is the duty of the defendant to use ordinary care. The evidence shows that notices requiring the employees to use respirators were posted at the plant of the defendant, and it is to be presumed that plaintiff knew of that rule. He apparently did, because he did use a respirator. He says, he did at all times he reasonably could. He testified that he complained to the foreman with regard to the respirators which he had, but there is no testimony that the foreman agreed to furnish any further appliances, and the law is that when and if an employee complains to some defendant or its agent of some defective appliance, and he knows it is defective, and he continues to use it, he then assumes the risk of using it, unless he continues to use it under the promise of the employer to get a good one.

"There is no evidence that the employer promised or held out any idea that he would or could get any different kind of respirator. The plaintiff knew that it was defective, and continued to use it in the absence of the employer's promise to get a new one, and he would, therefore, under the law assume the risk. The risks of his employment were, according to the evidence on the part of the plaintiff, obvious, open. There was the dust in the air—the silica dust and the coal dust. It could be seen. There was the heat from the furnaces which he complains of; it could be felt; he says himself that he used the respirator as much as he could.

Why? Because he knew that it was dangerous not to use it. That would be the only conclusion to draw from the situation. . . ."

The testimony, viewed in the light most favorable to the plaintiff, fully sustains the court's conclusions as to the facts, and under these facts we think the trial court was correct in holding that plaintiff's disease had resulted from a risk which he had assumed.

This was a common law action. The pleadings contained no reference to any statute relating to plaintiff's employment, but plaintiff now says there was a failure to comply with the provisions of §§ 6470 and 8505 of Pope's Digest.

Plaintiff's testimony is to the effect that the employer was engaged in the production and manufacture of silica from sand, and that the processes by which this was done produced a fine dust, which escaped into the air which appellant was required to breathe, and that the inhalation of this dust over the long period of his employment produced the serious disease with which he is now afflicted. He testified that he had been employed in nearly every kind of work about the mill, and that upon his complaint about the dust he was given the job of firing the boilers in 1936. The boiler-room was about 300 feet from the mill plant, but plaintiff testified that the north wind blew the dust into the boiler-room, and that the irritation of the throat and lungs which it produced was aggravated by the heat of the boilers.

If plaintiff had contracted the disease at that time, his cause of action was barred when he filed this suit. The case of *Field* v. *Gazette Publishing Co.,* 187 Ark. 253, 59 S. W. 2d 19, was a suit for damages to compensate an occupational disease which plaintiff had contracted, and it was there said: "As we view the situation, the great weight of American authority is to the effect that the cause of action arises and the statute of limitations begins to run from the date of the negligent act and not from the time the full extent of the injury may be ascertained."

But ássuming that the jury might have found that plaintiff's disease was contracted within three years prior to the date of the institution of this suit, we still concur iń the view above expressed of the trial judge that plaintiff had assumed the risk of contracting this disease. Plaintiff was employed occasionally as fireman in 1933, 1934 and 1935, and in that employment only since 1936. His own expert witnesses testified that there is a normal concentration of 3½ million particles of dust to the cubic foot of air, and that only when that number was exceeded did danger arise, and it is very questionable whether the testimony established the fact that the concentration of dust particles exceeded that number in the atmosphere in the boiler-room. But, even so, plaintiff was furnished a respirator, which he failed to use. His own testimony shows that he was fully aware of the conditions under which he performed his labor. He knew the dust injured him and made complaint thereof, and was permitted to change his employment on that account, and he continued in the service without any promise to improve conditions. As a common law proposition of the law of master and servant, the trial court properly held that plaintiff had assumed the risk.

Nor do we think that he was relieved of this assumption of risk by any statute of this state. In the first place, he did not plead or rely upon any statute, but alleged and relied upon his common law action. He insists now that his disease was contracted through the failure of his employer to comply with the provisions of §§ 6470 and 8505 of Pope's Digest, and that inasmuch as these sections of the law were enacted for the safety of employees, he was, under the provisions of § 9132 of Pope's Digest, excused from the assumption of the risk of danger incident to. his employment.

Section 9132 of Pope's Digest reads as follows: "In any action against any corporation under or by virtue of any of the provisions of this act to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risk of his employment in any case where the violation by such corporation of any statute enacted for the safety

of employees contributed to the injury or death of such employee."

In view of the provisions of this statute, it must be held that plaintiff did not assume the risk of injury if his disease resulted from the failure of his employer to comply with the provisions of any statute enacted for his safety. *Southern Anthracite Coal Mining Co.* v. *Rice*, 156 Ark. 94, 245 S. W. 805.

Section 6470 of Pope's Digest was enacted as § 2 of act 323 of the Acts of 1937, which is entitled "An act to provide adequate sanitary measures to safeguard the health of employees and the public," (Acts 1937, p. 1232), and reads as follows: "All factories, mills, workshops, mercantile establishments, laundries and other establishments shall be kept free from gas or effluvia arising from any sewer, drain, privy or other nuisance on the premises; all poisonous or noxious gases arising from any process, and all dust which is injurious to the health of persons employed, which is created in the process of manufacturing within the above named establishments, shall be removed as far as practicable by ventilators or exhaust fans or other adequate devices."

This act was approved March 25, 1937, and as it contained no emergency clause, it did not become effective until ninety days after the General Assembly adjourned. Plaintiff testified that he quit his employment about Christmas, 1937, on account of the occupational disease which he had then contracted, so that he was employed for only about six months after this act became effective.

We find it unnecessary to construe this act in all of its amplifications, but if its provisions are as broad as appellant insists, it does not confer a cause of action in the instant case, for two reasons. First, the testimony offered by appellant's expert witnesses is that silicosis is a disease which is not contracted within a shorter period of time than five years, and that the average time for its contraction, as shown by the experiments of the Federal Labor Department and Bureau of Mines, ranges from 8 to 12 to 15 years. According to his own testi-

mony, plaintiff was not employed for a sufficient length of time after act 323 became effective, even though it operated to relieve him from the assumption of the risk of contracting the disease, in which to have contracted it. Second, there is no proof in the record that there were not "other adequate devices," such as doors, windows, ventilation openings, water and hose, or other methods by which dust control could be had in the boiler-room where plaintiff was employed after act 323 became effective.

Section 8505 of Pope's Digest has no application here. It was enacted as a part of act 161 of the Acts of 1937, p. 588, which was an act to create the Department of Labor and to define the duties of the commissioner, and § 25 thereof provides that "This act shall not apply to mines and mining and/or the mining industry." The undisputed testimony is to the effect that the production of silica is a mining operation.

We conclude, therefore, that a verdict was properly directed in this case, for the reason that plaintiff had assumed the risk of contracting the occupational disease from which he suffers, and the judgment is therefore affirmed.