ORSINGER et al.

v.

SCHOENFELD et al.

No. 12702.

Court of Civil Appeals of Texas.

San Antonio.

June 2, 1954.

Rehearing Denied June 30, 1954.

562

Kelso, Locke & King, San Antonio, for appellants.

B. P. Matocha, Orville C. Walker, Dodson, Duke & Branch, Clifford Davis, San Antonio, for appellees.

POPE, Justice.

Appellants are landowners and home-owners who filed a suit against Chas. M. Schoenfeld and Olmos Rock Products, Inc., to permanently enjoin an alleged nuisance. The trial court sustained a plea in abatement to the appellants' original petition, and they have appealed. The trial court heard no evidence.

■ The plea in abatement stated that Article 4644, Vernon's Ann.Civ.Stats., forbade suits to enjoin subsurface drilling or mining operations unless the respondent is shown to be incapable of responding in damages, and that the suit was prematurely brought because it only asserted anticipated occurrences and results. The plea in abatement was actually a statement of certain special exceptions, and, as such, sufficiently raised the points intended by the appellees. Ferguson v. Commissioners' Court of Sabine County, Tex.Civ.App., 230 S.W.2d 303; Clark v. City of Dallas, Tex.Civ.App., 228 S.W.2d 946. The order sustaining the exceptions recited that the appellants declined to allege that the defendants are unable to respond in damages, and then dismissed the suit.

Appellants alleged that they brought the suit as a class action, that defendants had entered upon lands with the intent to establish a rock quarry and asphalt plant; that the quarry is located on property near a "number of permanent homes"; that the property immediately west and southwest of the quarry site has a number of residences erected upon it; that subdivided lots in the entire area "if not now used for residence purposes, were purchased and are now being held for that purpose"; and that all the plaintiffs either now reside on or own land in the vicinity of the quarry site. Appellants then alleged that the establishment and operation of the quarry will necessarily be accompanied by blasting with high explosives, causing noise, vibra-

tions and tremors of the earth; that foundations of residences "likely" will be damaged, water wells destroyed and polluted; that lives will be endangered by stones and rocks; that explosives must be stored on the quarry premises; that the operations will require heavy machinery, trucks, and much labor; that the pulverized limestone will result in dust; that the operation of the plant will result in the pollution of the air by fumes and heated oil; and that it is impossible to operate the plant without causing such annoyances, discomforts and damages. They alleged that the prior residential use of the vicinity will be destroyed by an industrial area and that the damages are such as are not compensable by the payment of damages.

From the record it appears that the chief point relied upon by the appellees in the trial court was that Article 4644 defeats the appellants' right to an injunction. That statute was passed originally in 1919, and provides in part:

"No injunction or temporary restraining order shall ever be issued prohibiting sub-surface drilling or mining operations on the application of an adjacent land owner claiming injury to his surface or improvements or loss of or injury to the minerals thereunder, unless the party against whom drilling or mining operations is alleged as a wrongful act is shown to be unable to respond in damages for such injury as may result from such drilling or mining operations; * * *."

The appellants failed to allege that the appellees were unable to respond in damages, as required by the statute, and the trial court for that reason sustained the exceptions and dismissed their suit. Appellants assert that the court erred in applying the statute because of the nature of the operations involved. Appellants' argument is that the operations are and will be in the nature of an open-cut quarry for the removal of limestone; that such operations are not "sub-surface drilling or mining operations" within the prohibition of the statute.

Appellants rely upon authorities which construe such terms as "mineral rights," "minerals" and "mines." These terms are construed as used in ordinary language, as distinguished from a scientific or technical definition which, of course, would include the taking of any substance and such things as soil, gravel, sand and any other substances composing the earth's crust. Their argument is supported by Heinatz v. Allen, 147 Tex. 512, 217 S.W.2d 994, which thoroughly treats the ordinary meanings of those terms, and concludes that the terms as used in a will to distinguish a surface estate from the sub-surface estate did not include ordinary limestone nor a quarry. See also, Watkins v. Certain-Teed Products Corporation, Tex.Civ.App., 231 S.W. 2d 981; Marvel v. Merritt, 116 U.S. 11, 6 S.Ct. 207, 29 L.Ed. 550; Kreps v. Brady, 37 Okl. 754, 133 P. 216, 47 L.R.A.,N.S., 106; J. M. Guffey Petroleum Co. v. Murrel, 127 La. 466, 53 So. 705.

The appellees can and do point to as many authorities holding that particular statutes, either by reason of their purpose or their wording, have been held to include limestone and other substances within the meaning of "minerals" or quarries within the meaning of "mining." Anderson v. Industrial Comm., 250 Wis. 330, 27 N.W. 2d 499; Barksdale v. Silica Products Co., Inc., 200 Ark. 32, 137 S.W.2d 901; Union Drainage Dist. No. 6 of Towns of Bourbonnais and Manteno v. Manteno Limestone Co., 341 Ill.App. 353, 93 N.E.2d 500; Burdick v. Dillon, 1 Cir., 144 F. 737; Nephi Plaster & Mfg. Co. v. Juab County, 33 Utah 114, 93 P. 53, 14 L.R.A.,N.S., 1043.

The approaches suggested are not helpful in view of the wording of the particular statute. The arguments ignore a descriptive word which, in our opinion, is controlling and which we have no reason to believe is, as suggested by one of appellees, a tautological word. The statute limits injunctive relief in cases involving "sub-surface" drilling or mining operations. It is true that any taking of minerals from the crust of the earth involves a sub-surface operation, but that fact does not compel the conclusion that the word is

therefore meaningless. It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute. Texas Bank & Trust Co. v. Austin, 115 Tex. 201, 280 S.W. 161. And, conversely, "a construction should not be adopted, if it can be avoided, that will render any part of the act inoperative, nugatory or superfluous." 39 Tex.Jur., Statutes, § 112; Spence v. Fenchler, 107 Tex. 443, 180 S.W. 597.

The question is not whether the term "mining" includes "quarrying" but whether "sub-surface mining" includes "quarrying." The Legislature in using the word "sub-surface" sought to distinguish surface operations from sub-surface operations. That distinction has validity as an actual mining fact, and, as stated in 15 Encyclopaedia Britannica, p. 544: "The broad classification of these methods, which is used by the American Institute of Mining and Metallurgical Engineers, divides metalliferous mining into two main fields: open-cut mining and underground mining." Limestone is not a metal, but as touching mining methods "underground" mining is a clear and broad classification, distinguished from another method broadly called "open-cut." A quarry is an open-cut method rather than an underground or, synonymously, a sub-surface method. We cannot disregard the legislative use of the word, especially when its use is in complete harmony with mining classifications. Article 4644 is inapplicable to the operation of an open quarry of limestone. And because it is inapplicable, the plaintiffs were not under the compulsion of the article, either to allege that defendants could not respond in damages or have their case dismissed.

■ But the trial court recited other reasons for sustaining the special exceptions. The other reason chiefly relied upon by appellees is that the suit was premature and complained only of anticipated wrongs, rather than of an existing nuisance. But the appellants have alleged more than that some future nuisance may occur. They alleged injury both to persons and property. They asserted positively and with certainty that "the establishment and operation of such quarry will *necessarily* cause and result in the situation and conditions hereinafter described * * *." The allegation is followed by a detailed statement of the conditions that will necessarily result. They include, blasting, noise, annoyance, vibrations, tremors, propulsion of stones and rocks, at the risk of life and property of those residing in the vicinity, the storing of explosives, the operation of heavy machinery, the pulverization of limestone with the creation of large amounts of dust, the creation of a dangerous traffic hazard in a residential area, the establishment of an industrial area in a prior residential area, the heating of oil and the pollution of the atmosphere and the discoloration of buildings. . The pleadings restate that the results, as detailed, are necessary consequences of the operation, however skillfully the quarry may be operated.

Whether the things complained against will necessarily occur, and if so, whether under the circumstances they will result in a nuisance, we cannot know until the appellants have been afforded an opportunity to present evidence. They may fail or succeed in proving their complaints. But the pleadings cannot be declared so uncertain and doubtful and the allegations of the claimed nuisance so problematical that they have failed to assert a cause of action when tested by special exceptions. Waggoner v. Floral Heights Baptist Church, 116 Tex. 187, 288 S.W. 129; Patton v. Carter, Tex.Civ.App., 197 S.W.2d 168; Assembly of God Church of Tahoka v. Bradley, Tex.Civ.App., 196 S.W.2d 696; Mast v. Oakley-Metcalf Funeral Home, Tex.Civ.App., 101 S.W.2d 819; Burrows v. Texas & N. O. Ry. Co., Tex.Civ.App., 54 S.W.2d 1090; Huff v. Letsinger, Tex.Civ.App., 7 S.W.2d 181.

■ Appellees correctly place emphasis upon the element of locality, insofar as it bears upon the question of nuisance. 31 Tex.Jur., Nuisances, §§ 3, 13, 18; Wood on Nuisances, § 140; High, Injunctions, § 776 (4th Ed.); 20 Tex.Law Rev., Nuisance Without Fault, pp. 419–420. They

urge that the petition on its face describes the locality and then conclude: "and such fact being undisputed, that such business could not constitute a nuisance in advance of operation as a matter of law * * *." They urge that the petition for injunction negatives a right to one. The petition asserts many facts with reference to the general locality. Appellees rely particularly upon an allegation by appellants which states, "That the area in which the above described property, upon which said defendant, Chas. M. Schoenfeld, expresses his intention of establishing a quarry, is situated in a rolling, hilly country, covered with live oaks and other large timber and lies immediately North of the City of San Antonio and within a few miles of its Northerly limits. * * *" But we cannot ignore other particular allegations. The appellants asserted other facts. They alleged that in the area near the proposed quarry, "a number of permanent homes have been established." They assert, "That the property immediately to the South of the above described land, * * * is already used for residence purposes. That the property immediately West and Southwest of said tract of land has been sub-divided * * * and a number of residences have been built West and Southwest of said tract of land." They asserted more generally that almost all the lands in the area have been subdivided, held or sold for residences, that the entire area has become and will continue to develop as one of the better suburban residential districts adjoining the City of San Antonio. The purport of these various allegations is that some of the lands are already occupied and other lots will be occupied for residential purposes, and that the lands are immediately near the proposed quarry. The pleadings sufficiently allege, to borrow a phrase from the Supreme Court of the United States, a "pig in the parlor". Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 388, 47 S.Ct. 114, 118, 71 L.Ed. 303. We cannot say, as a matter of law, that the pleadings defeat the appellants' right to present evidence.

The judgment of the trial court is reversed and the cause remanded.