**Mrs. Jewell SCHENEBECK and Russell Schenebeck, Plaintiffs,**

**v.**

**STERLING DRUG, INC., Defendant.**

**No. LR–66–C–248.**

United States District Court
E. D. Arkansas, W. D.

Oct. 22, 1968.

Henry Woods, of McMath, Leatherman, Woods & Youngdahl, Little Rock, Ark., Thomas C. Hullverson, of Hullverson, Richardson & Hullverson, St. Louis, Mo., for plaintiffs.

Alston Jennings, of Wright, Lindsey & Jennings, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

This products liability case, in which federal diversity jurisdiction is established, was tried to Court and jury during the week of September 9 of the current year. At the close of plaintiffs' case and again at the close of all of the

testimony defendant moved for a directed verdict. To the extent that the motions were based on certain grounds they were overruled; to the extent that they were based on other grounds ruling was reserved.

The case was submitted to the jury which after deliberating several hours returned a verdict of $40,000 in favor of the plaintiff, Mrs. Jewell Schenebeck, and a verdict of $10,000 in favor of plaintiff, Russell Schenebeck, the husband of the plaintiff first named. The defendant has now filed a timely motion for judgment notwithstanding the verdict; there is no alternative prayer for a new trial.

The undisputed evidence showed that Mrs. Schenebeck sustained permanent eye damage amounting to essential blindness as a result of her use of the drug chloroquine, manufactured and distributed by defendant, Sterling Drug, Inc., under the trade name "Aralen." Mrs. Schenebeck took this drug pursuant to the prescription of her physician, Dr. Ralph Patterson of Hot Springs, Arkansas, from early 1958 to late 1963 as medication for rheumatoid arthritis. It was the position of the plaintiffs that Mrs. Schenebeck's eye damage was proximately caused by negligence on the part of the defendant in failing properly to test the drug to discover its properties and in failing properly to warn the medical profession that chloroquine was capable of producing serious and permanent damage to the eyes of certain users.

In the course of the trial defendant contended earnestly that it was free from negligence, that no negligence of which defendant may have been guilty was a proximate cause of the condition of which Mrs. Schenebeck complains, that Mrs.

Schenebeck was guilty of contributory negligence, that she voluntarily assumed the risk of injury from the drug, and that plaintiffs' cause of action was barred by the Arkansas three year statute of limitations, Ark.Stats. § 37–206.

The motion now before the Court is based upon the claims that under the undisputed evidence in the case plaintiffs' cause of action accrued prior to December 9, 1963, and was consequently barred when the suit was filed on December 9, 1966, and that as a matter of law the damage to Mrs. Schenebeck's eyes was not proximately caused by any failure, negligent or otherwise, of the defendant to test or to give warnings about the side effects to be apprehended from the use of Aralen. Plaintiffs resist the motion, and both sides have filed memorandum briefs supporting their respective positions.

█ It is elementary that in passing upon a motion for judgment notwithstanding the verdict of a jury the Court is required to view the case in the light most favorable to the party obtaining the verdict, and that such party is entitled to the benefit of all favorable inferences which reasonable men might draw from the evidence.

██ As far as the issues of negligence, contributory negligence, and assumption of risk are concerned, the Court is satisfied that the jury was justified in finding that the defendant was negligent as contended by plaintiffs, that she did not assume the risk of injury from use of the drug, and that her negligence, if any, in continuing to use the product after she experienced visual difficulty in the late winter or early spring of 1963 was of less degree than the negligence of the defendant.[1] Defendant's contentions based on limitations and on the claim

---

1. While assumption of risk is a complete defense in an Arkansas tort action, contributory negligence on the part of a person injured or damaged as a result of the negligence of a defendant is not a complete defense unless such contributory negligence was equal to or greater than the negligence of the defendant proximately contributing to the accident.

However, where a plaintiff is guilty of contributory negligence of less degree than the negligence of the defendant, it is the duty of the jury to diminish plaintiff's award in proportion to his or her contributory negligence. Ark.Stats.Ann. § 27–1730.2. The jury was instructed adequately as to those principles of Arkansas law both in relation to the principal

that there was no proximate causal connection between its alleged negligence and Mrs. Schenebeck's eye condition require some discussion.

Background facts are not in dispute. As indicated the defendant is a manufacturer and distributor of prescription drugs, including Aralen. Chloroquine, the active ingredient in Aralen, was developed during World War II as a substitute for quinine, the domestic supply of which had been affected adversely by Japanese military operations in Asia. Some years after World War II it was discovered that Aralen in larger doses and ingested over relatively long periods of time is helpful in the treatment of rheumatoid arthritis and other collagen diseases.

Chloroquine, hereinafter called simply Aralen, like all other drugs useful in the treatment of human diseases is capable of producing adverse side effects on certain users. Most of those side effects, including some visual disturbances, are minor and are also reversible, that is to say, the side effects will disappear when use of the drug is discontinued.

Unfortunately, Aralen can also produce in certain users a disease or abnormal condition of the eye referred to as chloroquine retinopathy, which means a disease or abnormal condition of the retina caused by chloroquine. Chloroquine retinopathy is a side effect which is neither minor nor reversible. It is serious, permanent, and sometimes progressive even after use of the drug is discontinued. When chloroquine retinopathy affects the eyes of a patient, it is symptomized by progressive loss of vision and may ultimately produce total blindness; no corrective treatment for the condition is yet known.

In its later stages the disease can be detected by an ordinary examination of the back of the eye by means of an oph-thalmoscope, but in its earlier stages there are few objective manifestations, although visual field tests to determine the existence and location of "blind spots" are or may be helpful in making earlier diagnoses.

In early 1958 the plaintiff, Mrs. Schenebeck, was diagnosed by Dr. Patterson as suffering from rheumatoid arthritis. In earlier years she had been examined more than once at the Mayo Clinic in Rochester, Minnesota, in connection with other complaints.

Dr. Patterson prescribed Aralen, to be taken at the rate of one 250 mg. capsule per day. Mrs. Schenebeck used the drug in accordance with the prescription and without any apparent ill effects throughout 1958, 1959, 1960, 1961, and 1962. There is no question that Aralen is beneficial to the victims of rheumatoid arthritis, and Mrs. Schenebeck concedes that it was beneficial to her arthritic condition.

In early 1963 Mrs. Schenebeck began to notice a "blurring" of her vision and she began to experience difficulty in reading. She consulted Dr. Schwarz, a Little Rock opthalmologist, who found no pathology in her eyes and who found that her vision, as corrected by glasses theretofore prescribed for her, was essentially normal.

Mrs. Schenebeck continued to use Aralen after seeing Dr. Schwarz, and her eye condition continued to get worse. In May 1963 she consulted her physician in Hot Springs who suggested to her that she discontinue the drug until she had consulted an opthalmologist. Her Hot Springs physician, Dr. Patterson, did not know of her visit to Dr. Schwarz. While Dr. Patterson suggested that she not use the drug until she had seen an opthalmologist he did not warn her that she might be in danger of serious visual impairment.

claim of Mrs. Schenebeck and in relation to the derivative claim of her husband. Since the jury returned a general verdict, it is impossible, of course, to determine whether or to what extent, if any, the awards made to plaintiffs were diminished on account of her negligence, if any. No complaint is made as to the amounts of the verdicts, and in view of their size it is probably fair to say that the jury did not find that Mrs. Schenebeck was negligent.

Mrs. Schenebeck was not able to get an appointment with an opthalmologist until late July 1963 when she saw Dr. Cook of Little Rock, a concededly well qualified eye specialist. Dr. Cook checked her visual acuity; he also examined by ophthalmoscope the posterior portions of both eyes, and checked her eyes for glaucoma. He did not make a visual field examination. He found her eyes free from pathology and did not change her glasses.

Mrs. Schenebeck testified positively that she told Dr. Cook that she was taking Aralen and asked him if there was any causal connection between the use of the drug and the eye symptoms. She testified further that he told her that Aralen was "about the same as aspirin," and that he saw no harm in her continued use of the drug. Dr. Cook's office records do not reflect that her medication was discussed, and Dr. Cook has no personal recollection of her visit to his office; hence, he was unable either to confirm or to deny her statements as to what was said about Aralen. The jury was justified in believing her testimony.

Following her visit to Dr. Cook, Mrs. Schenebeck, without reporting to Dr. Patterson, resumed the use of Aralen. In October 1963 Mrs. Schenebeck, at the suggestion of a neighbor, made an appointment with and was seen by Dr. John Watkins, another Little Rock ophthalmologist. She told him that she was using Aralen, and he did not advise her to discontinue its use. He made essentially the same examination and tests as had been made by Dr. Cook, and he, like Dr. Cook, found no pathology. He did change Mrs. Schenebeck's glasses.

By November 1963 Mrs. Schenebeck was so seriously concerned about her eye condition that she wrote about it to the Mayo Clinic and inquired whether Aralen could be the causative agent. In her letter she did not refer to the fact that

she had been examined by three eye specialists who had found nothing wrong with her eyes. The Mayo Clinic informed Mrs. Schenebeck that Aralen might well be the causative agent and suggested that she discontinue its use until consultation with her own physician or with her ophthalmologist.

Upon receiving that advice from Mayo Clinic Mrs. Schenebeck visited Dr. Patterson again, taking the Mayo letter with her. She told Dr. Patterson that she had not been taking Aralen for a month. He told her that he would take up the matter with Mayo; he did not advise her that he considered her condition to be serious nor did he advise her at that time to discontinue the use of the drug.

Under date of December 8, 1963, Dr. Patterson wrote to Dr. Mayne of the Mayo Clinic; it is evident from the letter that Dr. Patterson was aware by then that Mrs. Schenebeck probably had chloroquine retinopathy and that her vision had been impaired permanently. By letter dated December 13, 1963, Dr. Mayne advised Dr. Patterson that Mrs. Schenebeck not take any more Aralen. As to her condition, Dr. Mayne stated that there was no known cure for it. On December 19 Dr. Patterson wrote Mrs. Schenenbeck a letter advising her definitely to discontinue use of the drug, and she has not used it since she received that letter about December 21, 1963.

In September 1964 Mrs. Schenebeck was seen again by Dr. Watkins who found pronounced pathology in the retina of both eyes. He caused her to revisit the Mayo Clinic where it was definitely determined that she was suffering from bilateral chloroquine retinopathy.[2] As of that time her corrected vision in one eye was 20/40 and in the other eye it was 20/30. After 1964 her vision continued to deteriorate notwithstanding her discontinuance of the drug's use. When she was seen again at the Clinic in 1966, her

2. It is well to point out the diagnosis of "chloroquine retinopathy" was tantamount to an identification of the causative agent because Aralen was the only chloroquine medication which Mrs. Schenebeck had consumed in any substantial quantity or over any extended period of time.

vision was 20/100 in one eye and 20/200 in the other. Her vision has continued to grow worse, and the condition may be continuing to progress.

The evidence in the case relating to proximate cause is by no means unrelated to the issue of limitations. In fact the two issues tend to overlap and intermesh. It is important to keep in mind, however, that the question of when a cause of action accrues is separate and distinct from the question of whether the cause of action, when it does accrue, has merit.

Taking up, first, the issue as to proximate cause, the defendant advances a number of contentions, and it may be conceded that the question raised by the motion is a serious one. The evidence relevant to the causal connection between the alleged negligence of the defendant in failing to properly test and warn and Mrs. Schenebeck's contracting chloroquine retinopathy is not as clear and full as might be wished. That is due in large measure to the fact that the defendant limited its evidence to lay testimony as to a warning letter disseminated to the medical profession in February 1963 and did not call any scientific or medical witnesses. That trial tactic deprived counsel for the plaintiffs of any opportunity to strengthen their case by cross-examination of a number of defendant's personnel who were present in the courtroom and who counsel for plaintiffs probably presumed would testify in great detail with respect to the characteristics of the drug and with respect to the nature and onset of chloroquine retinopathy. Counsel for plaintiffs also lost the opportunity to discredit defendant's evidence by means of rebuttal witnesses.

Counsel for the defendant addressed to the jury the same or essentially the same arguments that he advances in support of his motion, and the jury might well have decided the case the other way. It did not do so, however, and the Court is not prepared to say that plaintiffs did not make a submissible case on the issue of proximate cause.

Defendant's plea of limitations was the basis for a motion for summary judgment filed by defendant in September 1967. The motion was thoroughly briefed by both sides and was overruled. Limitations is also discussed in the briefs filed in connection with the instant motion.

Under the Arkansas statute it was incumbent upon plaintiffs to commence their suit within three years after the cause of action "accrued." As to the date of the accrual of the cause of action neither side has been any more specific than it has been required to be. Since the suit was filed on December 9, 1966, the defendant's position is that accrual date was prior to December 9, 1963, the specific date not being material. Plaintiffs' position is that the cause of action did not accrue until after December 9, 1963, the specific date not being material.

In their briefs counsel appear to have collected and discussed all of the comparatively few Arkansas cases dealing with limitations with respect to personal injury cases which had been decided up to the time of briefing. Faulkner v. Huie, 205 Ark. 332, 168 S.W.2d 839; Barksdale v. Silica Products Co., 200 Ark. 32, 137 S.W.2d 901; Steele v. Gann, 197 Ark. 480, 123 S.W.2d 520, 120 A.L.R. 754; Western Coal & Mining Co. v. Randolph, 191 Ark. 1115, 89 S.W.2d 741; Burton v. Tribble, 189 Ark. 58, 70 S.W. 2d 503; Field v. Gazette Publishing Co., 187 Ark. 253, 59 S.W.2d 19. Since the briefs were filed, there has been decided the case of Matthews v. Travelers Indemnity Ins. Co., 245 Ark. 244, 432 S.W.2d 485.

Faulkner v. Huie, supra, stands for the familiar proposition that where there is a known negligent invasion of a personal right, the cause of action accrues at the time of the invasion even though damage does not manifest itself until later. In that case the plaintiff was involved in an automobile accident; some years later he became deaf. He filed suit more than three years after the accident alleging that he did not discover and could not reasonably have discovered that the accident had caused his deafness until less than three years prior to the filing of

the suit. The Court held that the cause of action accrued when the accident occurred and that suit was barred.

Field v. Gazette Publishing Co. and Barksdale v. Silica Products Co., both supra, were industrial disease cases involving respectively, lead poisoning and silicosis. In both cases plaintiffs sued their former employers for negligence in failing to furnish them with safe places to work and safe appliances. At the times of the decisions both lead poisoning and silicosis were well recognized industrial diseases. In the Field case the disease manifested itself in 1926 as a lesion on one of plaintiff's toes; as soon as the manifestation occurred plaintiff received medical treatment, and it is inferable that his trouble was diagnosed at the time; he continued to work intermittently with his condition becoming progressively worse; he was incapacitated by 1928, and he filed suit in 1929, more than three years after the manifestation of the disease. The action was held to be barred.

Both the Circuit Court in instructing the jury and the Supreme Court in affirming the judgment dismissing the complaint stated that the cause of action accrued when plaintiff "contracted" the disease. It is clear, however, that the Court equated the time of the contracting of the disease with the time of its manifestation since it would seem rather obvious that the lead began to work toxically in plaintiff's system at least some time before the controlling date in June 1926 which would appear to have been the date on which the lesion was first noticed or the date on which plaintiff was first seen by his physician.

Field was cited with approval in Barksdale, but the citation appears to be merely dictum. The real issue in the later case was whether the trial court had erred in directing a verdict for the defendant on the basis that plaintiff had assumed the risk by continuing to work after becoming aware of dangerous exposure to dust in defendant's plant.

Burton v. Tribble and Steele v. Gann, both supra, were malpractice suits against doctors. In the Burton case case the doctor concealed the malpractice, and it was held that the cause of action did not accrue until discovery of the malpractice. No concealment was involved in Steele v. Gann, and it was held that the cause of action accrued when the malpractice was committed. However, between the decision in Burton v. Tribble and the decision in Steele v. Gann, the Arkansas Legislature adopted Act 135 of 1935, which provided specifically that malpractice suits must be brought within three years after the commission of the malpractice and at no later time. Steele v. Gann was decided under that statute. Cf. Matthews v. Travelers Indemnity Ins. Co., supra. A similar statute was involved in the very recent case of Martin v. Pacific Insurance Co. of New York, 245 Ark. 120, 431 S.W.2d 239, a securities fraud case decided on September 9 of the current year.

Western Coal & Mining Co. v. Randolph, supra, was a suit for damages to real property. The land involved was underlaid in part by the shaft of a coal mine; the defendant removed certain wooden upright supports from the mine which caused the surface to subside at a later time. It was held that the cause of action accrued when the surface subsided rather than at the earlier time at which the supports were removed.

This Court has no quarrel with the results reached in the cited cases. While the principles laid down therein would doubtless be applicable to certain types of products liability cases, the Court does not think that those principles would apply to all such cases, and specifically the Court does not think that the Supreme Court of Arkansas today would apply the holdings of the more restrictive of those decisions to a products liability case like this one involving an insidious and slowly developing side effect of a medicinal drug ingested pursuant to a physician's prescription.

In making that prediction of Arkansas law in this area the Court takes note without elaboration of the fact that within the present decade there have been

developments in both the statute and case law of Arkansas quite favorable to plaintiffs, including products liability plaintiffs, in personal injury and disease cases. A plaintiff in a products liability suit in Arkansas today has a much better chance to get an out of State manufacturer or supplier into court here and a much better chance of establishing a substantive right of recovery than he would have had some twenty or twenty-five years ago. There is no reason to believe that the liberal trend in allowing recoveries in products liability cases will be offset by a narrow view as to the accrual of a cause of action, particularly in a case involving injury resulting from a side effect of a drug, cosmetic, or similar product.

On the question of limitations the Court instructed the jury that Mrs. Schenebeck's cause of action accrued when Mrs. Schenebeck contracted chloroquine retinopathy and when she knew that fact or could have known it had she exercised ordinary care for her own health and safety. The jury was further instructed that in determining whether the cause of action accrued prior to or after December 9, 1963, it might take into consideration, "when she in fact contracted the disease in the sense that it was present in her eyes, when the disease had so far progressed as to be subject to medical diagnosis, when the disease or condition had so far progressed symptomatically as to lead Mrs. Schenebeck to seek medical advice with respect to her symptoms, what steps she took in that connection and when she took them and the information and advice which she received, together with the date of the actual diagnosis of the disease in (her eyes), all as shown by the evidence * * *."

Even if recent developments in Arkansas tort law be disregarded, the rule of law incorporated in the Court's instructions finds support at least to some extent in Western Coal & Mining Co. v. Randolph, and in the earlier case of Louisville Silo & Tank Co. v. Thweatt, 174 Ark. 437, 295 S.W. 710. Nor does the Court think that its instructions actually conflict with any of the other Arkansas cases cited heretofore if due consideration is given to the nature and facts of those cases.

The Court's instructions find support in federal decisions applying the statutes of limitations of States other than Arkansas. See R. J. Reynolds Tobacco Co. v. Hudson, 5 Cir., 314 F.2d 776; Ricciuti v. Voltarc Tubes Inc., 2 Cir., 277 F. 2d 809; Wright v. Carter Products, Inc., 2 Cir., 244 F.2d 53; and Sylvania Electric Products Co. v. Barker, 1 Cir., 228 F.2d 842.

In R. J. Reynolds Tobacco Co. v. Hudson, supra, the Court held that where the use of a product (tobacco) is alleged to have produced over a long period of time a disease (cancer), a cause of action by the user against the manufacturer does not accrue until the user knows, or in the exercise of ordinary care should know, that he has been damaged as a result of his use of the product. Citing 2 Frumer and Friedman, Products Liability, § 39.-01[3], the Court said that there is a "discernible trend" in products liability law toward holding that when a product can cause a disease which does not manifest itself immediately a consumer's cause of action does not accrue prior to diagnosis or until he should have discovered the nature of the disease.

Assuming that the Court's instructions stated the law correctly, and the Court thinks that they did, the Court is convinced that the jury was justified by the evidence in finding affirmatively that the cause of action did not accrue prior to December 9, 1963, or in coming to the conclusion that defendant had not carried its burden of showing by a preponderance of the evidence that the cause of action did accrue prior to that date. Cf. Sterling Drug, Inc. v. Cornish, 8 Cir., 370 F.2d 82, 86.

As was recognized in R. J. Reynolds Tobacco Co. v. Hudson, supra, awareness on the part of a consumer that he has sustained injury from use of a product involves both an awareness of the

fact of injury and awareness of a causal connection or probable causal connection between the product's use and the injury.

Mrs. Schenebeck knew, of course, substantially prior to December 9, 1963, that there was something wrong with her eyes, and she suspected that Aralen might be the cause. But, the jury was justified in finding that she did not realize the seriousness of her condition and did not know that Aralen was the cause until the Mayo diagnosis in 1964. Of course, as noted heretofore, as soon as she knew that she had chloroquine retinopathy, she knew that Aralen had caused the condition.

The jury had a right to consider that in May 1963 Dr. Patterson's advice to her was simply not to use Aralen until after she consulted an ophthalmologist; that thereafter she consulted two ophthalmologists who found no pathology in her eyes; that the letter which she received from the Mayo Clinic in November 1963 did not definitely identify Aralen as the cause of her trouble; that when she saw Dr. Patterson later in the same month, he did not at that time tell her to cease her use of the drug; and that when he wrote to her in December, he did not tell her that he knew or believed that she had sustained irreversible eye damage.

Regardless of whether the disease existed in her eyes and could have been diagnosed by appropriate procedures prior to December 9, 1963, it was not in fact diagnosed, and that certainly was not the fault of Mrs. Schenebeck. Before she saw Dr. Patterson in May 1963 she had had her eyes examined by Dr. Schwarz; after she saw Dr. Patterson she had her eyes examined not by one but by two ophthalmologists. The jury was clearly justified in finding that Mrs. Schenebeck used ordinary care, if not a high degree of care, to find out what was wrong with her.

In his post-trial brief counsel for defendant called the Court's attention to the unpublished opinion of the Circuit Court of Jefferson County, Arkansas, in the case of Morgan v. General Electric Co. et al., No. 17087, decided in November 1967. That case was, in part, a products liability case in which plaintiff sustained injury as a result of inhaling noxious fumes emanating from a product manufactured by General Electric. On a motion for summary judgment filed by the defendants the Circuit Court held that plaintiff had his "last dangerous exposure" to the drug more than three years prior to the filing of the suit, and that the statute of limitations applied. There was no appeal from the decision. The Court has given careful consideration to the facts in the Morgan case. Assuming that the rule recognized in some jurisdictions in some contexts that a cause of action arising out of the contracting of a disease accrues not later than plaintiff's "last dangerous exposure" to the substance or condition causing the disease was correctly applied in the Morgan case, the Court does not believe that the Supreme Court of Arkansas would apply that rule to a products liability case such as the one before the Court. In any event, the "last dangerous exposure" rule does not help defendant here since Mrs. Schenebeck continued to use the drug after December 9, 1963.

An order overruling the motion for judgment notwithstanding the verdict will be entered.