MIDWEST MUTUAL INSURANCE COMPANY
*v.* ARKANSAS NATIONAL COMPANY,
a Corporation, and Robert E. LYDDON

76-38                                   538 S.W. 2d 574

Opinion delivered July 19, 1976

*Wright, Lindsey & Jennings,* for appellant.

*Laser, Sharp, Haley, Young & Boswell, P.A.,* for appellees.

J. FRED JONES, Justice. This is an appeal by Midwest Mutual Insurance Company from an adverse summary judgment in a suit it filed against the appellees Arkansas National Company, Inc. and Robert E. Lyddon for $6,850, plus interest and costs.

We can do no better in stating the background facts than to reiterate the statement made by the appellant in its brief. The appellee, Arkansas National Company, was an independent insurance agency in Hot Springs, Arkansas, and the appellee Robert E. Lyddon was one of its agents. The agency acquired an assigned risk liability insurance policy for Red Top Cab Company of Hot Springs through Farm Bureau Mutual Insurance Company covering certain taxicabs owned by Red Top. On August 7, 1970, pursuant to the request of Red Top, Arkansas National caused a certain taxicab to be deleted from the coverage while undergoing repairs and another taxicab substituted in its place. There was a standing agreement between Arkansas National and Red Top that substitution of taxicabs under the coverage would be effective as of the day the request was made. On August 11, 1970, after the original taxicab had been repaired, Red Top requested Arkansas National's agent, Lyddon, to delete the replace-

ment vehicle and reinstate the original taxicab under the coverage; Lyddon, however, neglected to cause the original taxicab to be reinstated and, on August 20, 1970, it was involved in a collision in Hot Springs with a motorcycle driven by Robert A. Bratton and owned by Archie Lee Lowe.

On May 24, 1971, Bratton and Lowe instituted suit against Red Top for personal injuries and property damage. Red Top made demand on Farm Bureau to provide it with a defense and pay any judgment that might be entered and Farm Bureau declined. Before the case reached trial, Bratton and Lowe took a voluntary nonsuit. Bratton then made claim against the appellant Midwest under the uninsured motorist provisions of a policy of insurance the appellant had issued covering the motorcycle. The appellant settled Bratton's claim by the payment of $5,250. Bratton and Lowe again instituted suit against Red Top for personal injuries and property damage, and the appellant claimed subrogation to the extent of $5,250 it paid in settlement to Bratton. Red Top filed a third party complaint against Arkansas National seeking judgment over against it; Arkansas National filed a motion to strike the third party complaint and the motion was granted by the trial court on April 17, 1973. The third party complaint alleged that "third party defendant negligently failed to obtain the insurance as per its agreement, and its negligence has forced defendant to defend this action which should have been done by its insurance carrier"; and, Red Top prayed "judgment over against third party defendant for any judgment obtained by plaintiff plus its costs and attorney's fees in defending this action."

In granting the motion to dismiss, the trial court said:

Your motion is granted. To start with:

Number 1. The contract specifically between Farm Bureau and Red Top Cab precludes such a Third Party Complaint until judgment is recovered.

Number 2. Arkansas National Company is not the general agent of Farm Bureau, but the agent of the insured.

The case proceeded to trial on August 8, 1973, resulting in a verdict in favor of Bratton and Lowe against Red Top for $6,850, and judgment for that amount together with interest and costs was entered on September 11, 1973. Thereafter, for valuable consideration, Red Top duly assigned to the appellant its "chose in action" against appellees for failure to reinstate insurance coverage on the taxicab involved in the collision and, on March 29, 1974, Midwest filed suit against the appellees Arkansas National and its agent Lyddon for $6,850. The appellees answered alleging, as affirmative defenses, that the suit was barred by limitations and that the assignment was not valid. Motions for summary judgments were subsequently filed by both sides. The parties stipulated that appellee Lyddon was negligent, that his negligence resulted in the judgment against Red Top, and that the sole question to be determined by the trial court was the validity of the affirmative defenses as a matter of law. The trial court held that Red Top's assigned cause of action accrued on August 11, 1970, when Arkansas National negligently failed to reinstate the insurance coverage and the three year statute of limitations as set out in Ark. Stat. Ann. § 37-206 (Repl. 1962), started running on that date. The trial court granted appellees' motion for summary judgment from which comes this appeal.

On appeal to this court the appellant has designated the following point on which it relies for reversal:

> The court erred in not granting appellant's motion for summary judgment and in granting summary judgment for appellees, because appellant is entitled to judgment as a matter of law.

The parties to this appeal have stipulated that this is a cause of action for negligence, consequently the three year statute of limitations provided in § 37-206 is applicable. It would further appear, from the arguments presented, that the parties are in basic agreement that appellant, as assignee, had no greater rights, and was subject to the same defenses, an would have applied to Red Top. *Davis v. So. Farm Bur. Cas. Ins. Co.*, 231 Ark. 211, 330 S.W. 2d 276 (1960). Consequently, the question as to limitations on this appeal boils down to when Red Top's cause of action against its insurance agent,

Midwest, accrued. The appellees contend it accrued on August 11, 1970, as found by the trial court, and the appellant contends that it accrued not earlier than May 24, 1971, when suit was filed against Red Top and it first learned that it had no insurance coverage through Farm Bureau's refusal to defend. It was at this point Red Top was required to assume the cost of its own defense because of the appellee's negligence in failing to obtain insurance coverage. So we are forced to the conclusion that the appellant is right in its contentions on this point.

The appellees, and apparently the trial court, relied heavily on our decisions in *Field* v. *Gazette Pub. Co.*, 187 Ark. 253, 59 S.W. 2d 19 (1933), and *Faulkner* v. *Huie*, 205 Ark. 332, 168 S.W. 2d 839 (1943). Both of these cases involved personal injury with delayed results — lead poisoning requiring multiple surgical procedures before final diagnosis in the *Field* case, and loss of hearing six years after an automobile collision in the *Huie* case. We consider the case at bar more in point with the cases found *not in point* in the *Huie* case than with the *Field* and *Huie* cases. In *Huie* we said:

> The appellant cites several cases which, he contends, show that the doctrine followed in the *Field* case does not apply here. These cases are not in point.
>
> In *C., R. I. & P. Ry. Co.* v. *Humphreys,* 107 Ark. 330, 155 S.W. 127, L. R. A. 1916E, 962, the railway company had constructed a culvert on its right-of-way. Damages to the adjoining property resulted. This court held that the statute of limitations would not begin to run at the time of the construction if it were known at that time merely that damage could not be reasonably known and estimated at that time. The construction of the culvert was lawful unless it had a damaging effect and the passage of time alone would reveal whether it would have a damaging effect — whether any wrongful act had been committed at all. Here the wrongful act was complete at the moment the car was turned over.
>
> The same principle is involved in the case of *Brown* v. *Arkansas Central Power Company,* 174 Ark. 177, 294 S.W. 709. The action there complained of was the construc-

tion of a power plant which was lawfully constructed upon the defendant's lands, but which, it was claimed, through its operation, constituted a nuisance. This court held that it could not say as a matter of law that the plant was of such a nature that it could be known at the beginning that damage must necessarily result and that the nature and extent of such damage could have been reasonably ascertained and estimated at the time of construction. If not, the statute of limitations would not begin to run at the time of the construction.

In *Schenebeck* v. *Sterling Drug, Inc.*, 423 F. 2d 919 (8th Cir. 1970), a case in which the defendant argued that the statute of limitations ran from the day of the wrongful act, the United States Court of Appeals for the Eighth Circuit said:

> While it is true that the Arkansas Supreme Court has referred to the statute of limitations governing negligence actions as commencing "from the time when the injury was first inflicted * * *," *Field* v. *Gazette Publishing Co.*, 187 Ark. 253, 59 S.W. 2d 19, 20 (1933), and that court has specifically held that a plaintiff who discovered more than three years after an automobile accident that his loss of hearing was traceable to the accident could not recover since the ". . . wrongful act was complete at the moment the car was turned over," *Faulkner* v. *Huie*, 205 Ark. 332, 168 S.W. 2d 839 (1943), nevertheless, an analysis of the Arkansas cases, we believe, demonstrates that appellant reads them too narrowly. As we construe the Arkansas cases, in the instances where there has been delay between the negligent act and the damage, the occurrence of harm marks the beginning of the period. Thus, in *Field* v. *Gazette Publishing Co., supra,* also dealing with a slow-developing disease, the court approved an instruction authorizing the jury to determine whether the statute of limitations had run by determining whether the plaintiff ". . . contracted the malady of which he complains . . ." prior to a specified crucial date. This same test was again mentioned as a dictum in *Barksdale* v. *Silica Products Co.*, 200 Ark. 32, 137 S.W. 2d 901 (1940). Even though defendant has completed a negligent surgical operation, Arkansas has held that the statute need not

commence running with the negligent act if discovery of the damage has been delayed. See *Burton* v. *Tribble,* 189 Ark. 58, 70 S.W. 2d 503 (1934) (patient's malpractice action against surgeon commenced more than three years following surgical procedure to recover for damage attributable to a foreign object left in the body, held not barred).[1] In an action for damage to land subsiding because of loss of subjacent support caused by defendant's earlier negligent act, Arkansas Court has held the cause accrues from the time the damage to the surface becomes apparent rather than when the defendant removed the underground support. *Western Coal & Mining Co.* v. *Randolph,* 191 Ark. 1115, 89 S.W. 2d 741 (1936). A traditional element of a cause of action in a negligence action requires the invasion of another's interest. See Restatement (Second) of Torts, § 281 (1965); Prosser, The Law of Torts, 146-148 (3d ed. 1964). Ordinarily, the plaintiff must suffer some actual loss or damage in order to bring an action. Slight damage initiates the accrual of the cause of action. See *Faulkner* v. *Huie,* 205 Ark. 332, 168 S.W. 2d 839 (1943); Prosser, *supra,* at 146-148.

It is entirely possible that Red Top may have had a cause of action against Arkansas National for breach of contract accruing on August 11, 1970, when Arkansas National failed to reinstate the insurance coverage. That apparently was the trial court's view when on April 17, 1973, Red Top attempted to join Arkansas National as a third party defendant in the tort action brought by Bratton and Lowe against Red Top. The parties stipulated that the action resulting in the judgment, from whence comes this appeal, was an action sounding in tort and not in contract. We conclude that Red Top had no tort action against Midwest until a tort against Red Top was committed by Arkansas National and that Arkansas National's negligence in its failure to convert the insurance coverage did not become tortious as to Red Top and for which a cause of action would lie, until at least some element of damage accrued to Red Top because of the negligence of Arkansas National. According to the record before us, Red Top's cause became actionable against Arkan-

---

[1]The statute has since been changed in medical malpractice cases.

sas National on or after May 24, 1971, when Red Top was forced to bear its own expense in defending litigation because of Arkansas National's negligence in failing to transfer the insurance coverage.

Both parties to this litigation filed motions for summary judgment. We conclude that the statute of limitations had not run against Red Top in favor of Arkansas National when suit was filed by Midwest on March 29, 1974, but the appellant's secondary argument concerning the validity of the assignment from Red Top to Midwest is another matter. As already indicated, we are of the opinion Red Top could have asserted a cause of action for breach of contract against Arkansas National on August 11, 1970, when the breach occurred by failure to reinstate the insurance but Red Top could not interplead such breach of contract action into the personal injury and property damage tort action filed by Bratton and Lowe against Red Top as the trial court correctly pointed out.

In other words, it would appear that Red Top had an election of two separate remedies or causes of action against its insurance agent. Arkansas National, in this case. It could have sued for damages for breach of contract when the breach occurred as above set out, or it could sue for damages in tort when the tort occurred and became actionable as above set out. The same three year statute of limitations applied in either the breach of contract or the tort action. It would appear that in order to avoid the statutory bar to an action in contract, the appellant was careful to lay the suit it did file in tort rather than in contract. It is clear that had the suit been for breach of contract it would have been barred by the statute. Since the suit was in tort it was within the statute but we conclude it was not assignable.

It must be remembered that the assignor Red Top did not assign a judgment for $6,850 to the appellant Midwest in this case. Red Top did not *own* the judgment; Red Top *owed* the judgment for $6,850 to Bratton and Lowe who were complete strangers to the transactions between Red Top and its insurance agency Arkansas National. Bratton's and Lowe's claims against Red Top were liquidated by judgments for $6,850 but the subject of the assignment of this case was Red Top's separate tort damage claim against its insurance agent.

The pertinent part of the written assignment appears as follows:

> On September 11, 1973, judgment was rendered against Red Top in favor of Robert A. Bratton and Archie Lee Lowe in the total sum of $6,850.00 together with interest thereon from that date until paid at the rate of six percent (6%) per annum and costs. The chose in action herein assigned is that cause of action which Red Top had against the producing agent, Arkansas National for negligently failing to provide coverage as promised resulting in the judgment debt against Red Top.

> We hereby authorize Midwest Mutual Insurance Company, in its own name and at its own cost, to make any demands, institute any and all legal proceedings and exercise all powers and rights which would be ours to enforce this claim and to receive any or all of same to its own use and hereby relinquish forever all our claims thereto or rights therein.

We agree with the trial court's observation that Red Top's assigned claim and rights of recovery against Arkansas National were not necessarily limited to the judgment for $6,-850 obtained by Bratton and Lowe against Red Top.

As between the parties to the litigation in this case, Red Top's actionable claim against Midwest amounted to an unliquidated tort claim and it was not assignable. See *So. Farm Bur. Cas. Ins. Co.* v. *Wright Oil Co., Inc.*, 248 Ark. 803, 454 S.W. 2d 69; *Lowrey* v. *Lowrey*, 260 Ark. 128, 538 S.W. 2d 36 (1976). See also *Nat'l Fire Ins. Co.* v. *Pettit-Galloway Co.*, 157 Ark. 333, 248 S.W. 262.

The judgment is affirmed.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I dissent because I would hold that the claim was assignable. This holding, in my opinion, would not conflict with our holdings that tort claims for personal injuries are not assignable. There is no sound reason why such a claim as the one involved here should not be assignable under the circumstances prevailing.