White vs. Reagan.

## WHITE vs. REAGAN.

| 32 | 281 |
| 83 | 286 |
| 32 | 281 |
| 89 | 374 |

1. PLEADING: *Recoupment, counter claim, etc.*
   Only such matters as are connected with or grow out of the plaintiff's cause of action, can be pleaded by way of recoupment, or as a counter claim.

2. ———: *Counter claim and cross complaint.*
   The only distinction between a counter claim and cross complaint is, that the former is a cause of action in favor of the defendant against the plaintiff, and the latter against a co-defendant.

3. LIMITATION: *Statute of, as between attorney and client.*
   If an attorney is guilty of negligence or want of skill in the performance of his professional duties, a cause of action immediately arises in favor of the client and the statute of limitation commences to run.

White vs. Reagan.

APPEAL from *Washington* Circuit Court.
Hon. J. M. PITTMAN, Circuit Judge.
*William Walker,*for appellant.
*J. D. Walker*, *contra.*

HARRISON, J.:.

This was an action of assumpsit, commenced on the 2d day of January, 1867, by William D. Reagan against George E. White and Whitson B. Taylor, on a promissory note for $1100, dated 26th, and delivered on the 27th February, 1860, payable one day after date, and bearing 10 per cent. interest from maturity.

The case has before been in this court ; see *White* v. *Reagan,* 25 Ark., 622. After it was remanded to the Circuit Court the plaintiff filed replications to the defendant, White's, plea of the statute of limitations, and a demurrer to the plea of recoupment. The demurrer to the plea of recoupment was sustained; and White then filed a cross complaint against the plaintiff and his co-defendant Taylor, to which he also made other persons hereafter named, defendants; and thereupon moved that the action be transferred from the law to the equity side of the court. The court refused to transfer the action to the equity docket; and the plaintiff filed an answer to the cross complaint, which, however, does not appear in the transcript, and the issues were submitted to a jury, which found a verdict for the plaintiff for the sum of $2784. Taylor made no defense, and the other persons named as defendants in the cross complaint do not appear to have been served with process. White, without moving for a new trial, appealed.

The plea of recoupment was in substance : that the plaintiff, on the 27th day of February, 1859, loaned to James C. Hodges $1000, for which Hodges and the defendants, as his securities, executed to him a writing obligatory of that date, payable one day after

date and bearing 10 per cent. interest from date until paid ; that.
Hodges agreed with the defendants before he got the money, that.
if they would become his securities in the writing obligatory, to
give them a mortgage, with a relinquishment of his wife's dower
on Lot No. 3, in Block No. 26 and Block No. 20, in Fayetteville,
as an indemnity against their liability; that the plaintiff and
James R. Pettigrew, who were partners in the practice of law,
undertook and promised the defendants, in consideration of their
becoming such securities, to draw the mortgage, and that they
accordingly drew a mortgage, which was executed by Hodges
and also his wife ; but the same was so negligently and unskill-
fully drawn, that it contained no relinquishment of dower; that
Hodges died on the 1st day of October, 1859, leaving him sur-
viving his said wife, who upon his death became seized of a
dower estate in the said property; and that he left no other
property ; that the said property was, when the mortgage was
given, and then was, if not subject to the dower estate of Hodges'
widow, ample indemnity to the defendants; but subject to that
estate, its value did not exceed $500, and was not a sufficient in-
demnity ; that the defendants after Hodges' death gave the note
sued on in discharge and satisfaction of the writing obligatory,
but when the same was given, he said White was not aware of
the fact that the dower had not been relinquished in the mort-
gage deed, and was of the belief that he and Taylor were fully
indemnified; and that by reason of the said negligence and un-
skillfulness of the plaintiff and Pettigrew, he had lost all benefit
of the mortgage.

The plea assumes that the note and writing obligatory were
for the same consideration. But this assumption is unfounded ;
the note was given in satisfaction of the writing obligatory, and
was intended to operate as an extinguishment and not as a con-
tinuation of it. The undertaking of Reagan and Pettigrew to

write ·the mortgage, was no part of the consideration of the note, and the note and obligation also varied as to the amount, time of payment, and parties. "If a settlement be made of the old contract by a new arrangement, varying it in form, and agreed to be substituted therefor, upon a sufficient consideration, the plea of this accord would be a sufficient answer to an action on the original contract." Sto. on Con., sec. 982, *a*. Recoupment is the right of the defendant to claim a reduction of the plaintiffs' demand on account of some breach of stipulation by the plaintiff in the contract sued on, and is allowed to avoid circuity of action; and the right only exists where a cross action can be maintained. Pom. Rem., secs 731, 732; Ledger on Damages, 541; *Wheat* v. *Dotson*, 12 Ark., 699; *Rotan* v. *Nichols*, 22 Ark., 244. And the damages recouped must arise in the particular contract on which the action is founded. *Deming* v. *Kemp*, 4 Sandf., 147; *Leayback* v. *Jones*, 9 Mo., .470.

It is thus seen that the court very properly sustained the demurrer to the plea.

The allegations of the cross complaint, so far as it is necessary to state them, were: that James C. Hodges, on the 27th day of February, 1859, applied to the plaintiff for a loan of $1000, and it was agreed between the plaintiff, said Hodges and the defendants, that he should lend Hodges the money, and Hodges and the defendants as his securities, should execute to him a writing obligatory for the sum, payable ˙twelve months after date, and bearing 10 per cent. interest from date until paid, and that Hodges should indemnify the defendants by a mortgage with a relinquishment of his wife's dower, on Lot No. 3, in Block No. 26 and Block No. 20, in Fayetteville, which mortgage should be written and prepared by the plaintiff, who was a practicing lawyer; that the plaintiff loaned Hodges the money, and Hodges and the defendants executed the writing obligatory; that the

plaintiff did draw a mortgage on the property, but only to and in favor of the defendant Taylor, which on the first day of March, 1859, was executed by Hodges and Alley, his wife, and on the same day acknowledged and recorded; but that through the negligence of the plaintiff, the name of the wife was not inserted in the mortgage, and it contained no relinquishment of her dower. That Hodges died intestate in the latter part of the year 1858, leaving him surviving the said Alley, his widow, and Robert Hodges, his only child and heir at law; and letters of administration upon his estate were, in December of that year, granted to Martin G. Bonham.

That the defendants, on the 26th day of February, 1860, gave the note sued on in satisfaction and discharge of the writing obligatory; but, he, the defendant, George E. White, had not then seen the mortgage, and was under the impression and belief that it was to Taylor and himself jointly, and that the dower had been relinquished. That since the pendency of the suit, and at the March Term, 1869, of the court, one of his attorneys in the case, John T. Humphrey, without his knowledge or consent, or any authority from him, entered into some kind of a compromise with the plaintiff, and in compliance therewith paid him $500, which money Humphreys borrowed from James E. Tott, a merchant in Fayetteville, on his White's account, and though he had, notwithstanding the said Humphrys had no authority to borrow money for any purpose on his account, paid Trott, who had acted in good faith, he had refused to ratify the compromise and had even rejected and repudiated the same.

That on the 6th day of June, 1867, Taylor filed a bill in equity against the widow, heir at law and admistrator of Hodges, for the foreclosure of the mortgage, alleging therein that he had satisfied and paid the writing obligatory, which suit was still pending.

That Hodges left at his death money sufficient, after deducting the widow's portion thereof, to pay the writing obligatory, which passed to the possession of his widow, and was converted by her to her own use, and that no property whatever came to the hands of his administrator, and that his estate was insolvent.

That Hodges, when the mortgage was given, had no title or right to Lot No. 3, in Block No. 26; that Block No. 20, if unincumbered by the dower estate, is of sufficient value to satisfy the debt and indemnify the securities, but would not, subject to that, sell for more than $300.

That Tayler was insolvent.    That Robert Hodges had died intestate, leaving him surviving Sarah Hodges, his widow, and Magnolia, wife of James Poor, James C., Jr., Robert K. and William T. Hodges, his children and heirs at law, all of whom are infants, and that he left no estate and there was no administration.

That the dower of Alley Hodges had never been assigned her, and a sale of the property, which was then in the occupancy of the widow and children of Robert Hodges, subject to her dower estate, would result in sacrificing it.    And that the suit by Taylor to foreclose the mortgage, though brought in his name, was for the benefit of Reagan, who had given him an acquittance and release of the debt.

Alley Hodges, Martin G. Bonham, Sarah Hodges, James Poor, Magnolia Poor, James C. Hodges, Jr., Robert H. Hodges and William Hodges, were made with the plaintiff, and Taylor defendants.

The prayer was: that Alley Hodges be required to account for the moneys of her husband's estate, which she had converted to her own use; and that the value of her dower should be ascertained; that the mortgaged premises be sold, and if the moneys so converted, after deducting one-third, which she might right-

fully retain, was found to be equal to such value, that the same be sold discharged of the dower, and that the plaintiff be paid the amount due him after deducting the $500 received from Humphreys, and after the plaintiff was paid, that he White be paid the $500 paid through Humphreys.

There is no reason why the appellant might not have pleaded the payment of $500 and the release of Taylor; and the claim for damages by the mistake in drawing the mortgage could have been set up, if at all, as well by counter claim as by cross complaint. But we think it could not be set up in the action in either mode. The counter claim must be a cause of action arising out of the contract or transactions set forth in the complaint, as the foundation of the plaintiff's claim, or connected with the subject of the action. Sec. 4570, Gantt's Digest.

It will not be contended that the damages arose out of the contract, the note sued on, or any transaction set forth in the complaint; nor can it be insisted that they are in any way connected with the subject of the action. Mr. Pomeroy in his recent work on Remedies, sec. 742, says: "If a contract is set forth in the complaint or petition as the foundation of the plaintiff's demand, the counter claim must arise out of that same contract; and this plainly embraces the ancient recoupment of damages, although far broader in its operation than that species of defense. If a ' transaction ' is set forth as the foundation of the plaintiff's demands, the counter claim must arise out of that ' transaction,' and so far as ' transaction' is something different from or additional to ' contract,' this is a provision not identical in its effects with either ' set-off' or ' recoupment;' it clearly embraces many instances of equitable cross-demand and relief in favor of the defendant; and the only real doubt is, whether it extends also to legal causes of action.

Whatever be the nature of the claim asserted by the plaintiff; for the Codes contain no restriction in respect of this matter, any counter claim may be pleaded "which is connected with the subject of the action," and in regard to the subject of the action he says: "It would, as it seems to me, be correct to say in all cases, legal or equitable, that the 'subject of the action' is the plaintiff's main primary right which has been broken, and by means of whose breach a remedial right arises. Thus the right of property and possession in ejectment and replevin, the right of possession in trover or trespass, the right to the money in all cases of debt, and the like, would be 'the subject' of the respective actions. Although in a certain sense, and in some classes of suits, the things themselves, the lands or chattels, may be regarded as 'the subject,' and are sometimes spoken of as such, yet this cannot be true in all cases; for, in many actions, there is no such specific thing in controversy over which a right of property exists. The primary right, however, always exists, and is always the very central element of the controversy around which all the other elements are grouped, and to which they are subordinate." Ib., sec. 775.

In *Tinsley* v. *Tinsley*, 15 B. Mon., 454, the plaintiffs had commenced proceedings to obtain possession of a farm in possession of the defendant. The defendant had thereupon brought an equitable suit to restrain the proceedings, had given bond and obtained a preliminary injunction. The suit being dismissed, the plaintiff brought his action on the land to recover damages for being kept out of the possession of the farm by means of the injunction during the continuance of the suit. The defendant pleaded a counter claim, alleging that notwithstanding the injunction, the plaintiff wrongfully took possession of the land, and took and converted the crops thereon to his own use, and demanding judgment for the damages thus caused. The court

of appeals of Kentucky say : "It is not required that the coun-
ter-claim itself shall be founded in contract or arise out of the
contract set forth in the petition ; but it is sufficient that it arise
out of the transaction set forth in the petition, or be connected
with the subject of the action. As the petition states the occu-
pation of the land by Mrs. Tinsley during the pendency of the
injunction, and claims damages therefor, any interferance by the
plaintiff which rendered such occupation less profitable or less
valuable to the occupant constituted a cause of action arising out
of the transaction set forth in the petition, and is connected with
the plaintiff's action." "A counter-claim," say the Supreme
Court of Indiana, "is that which might have arisen out of, or
could have had some connection, with the original transaction in
the view of the parties and which at the time the contract was
made, they could have intended, might, in some event, give one
party a claim against the other for compliance or non-compli-
ance with its provisions." *Conner* v. *Winter*, 7 Ind., 523.

The breach of contract complained of by the appellant took
place, and his alleged cause of action arose a year before the
note sued on was made ; the mortgage formed no part of the
consideration of the note, and the giving of the note was entirely
independent of the execution of the mortgage.

A cross-complaint is allowed "when a defendant has a cause
of action against a co-defendant, or a person not a party to the
action, and affecting the subject matter of the action." Sec.
4559, Gantt's Digest ; *Trapnall, ex'r.,* v. *Hill et al.,* 31 Ark., 346.

We have just seen that the appellant had no cause of action
against the plaintiff arising either out of the contract, or con-
nected with the subject of the action, and it is impossible to con-
ceive what cause of action he had against Taylor or any other of
the defendants to his cross complaint, that in any manner affected
the plaintiff's right to recover, or the subject matter of his action.

"The only real difference between a complaint and a cross-complaint," says the author we have quoted, "is that the first is filed by the plaintiff and the second by the defendant. Both contain a statement of the facts, and each demands affirmative relief upon the facts stated." Ib. sec. 808. And we may add, the difference between a counter-claim and a cross-complaint is this: in the former the defendant's cause of action is against the plaintiff, and in the latter against a co-defendant, or one not a party to the action.

The cross-complaint alleged or showed no reason why the plaintiff should be restrained in his action until the matters set up in the cross-complaint between White and Taylor and the new parties could be determined. It contained no averment of the plaintiff's insolvency, or any matter showing irreparable injury to him, if judgment were recovered against him; yet the transfer of the action to the equity side of the court, would have been a virtual inhibition of proceedings in the plaintiff's action, without bond or security as required in injunction suits, until the cross-complaint was heard.

More than eight years elapsed after the alleged breach of the plaintiff's contract before he commenced his action, and the cross-complaint shows no cause why suit was not brought within three years, or the time of limitation, or that might displace the bar of the statute. White's right of action arose when the plaintiff violated his contract. Sedg. Damages, 117; *Wilcox* v. *Executors of Plummer*, 4 Pet., 172; *Howell* v. *Young*, 5 Barn. & Cress., 259.

In the case of *Wilcox* v. *The Executors of Plummer*, the plaintiff placed in the hands of Plummer, an attorney, a note for collection; upon which he, on the 7th of May, 1820, instituted suit against the maker, but neglected to sue the indorser. The maked proved insolvent, and, on the 8th of February, 1821, he instituted suit against the indorser, but committed a fatal mis-

take by a misnomer of the plaintiffs; after various delays the case was brought to trial in April, 1824, and the plaintiffs were non-suited. On the 9th of November, 1822, the action against the indorser became barred by the statute of limitations. The plaintiffs, on the 27th of January, 1825, brought suit against Plummer for negligence in not suing the indorser before the 9th of November, 1822, and for negligence and unskillfulness in the conduct of the suit. The defendant pleaded the statute of limitations of three years. The court say : "When the attorney was chargeable with negligence or unskillfulness his contract was violated, and the action might have been instituted immediately. Perhaps in that event no more than nominal damages may be proved, and no more recovered ; but on the other hand, it is perfectly clear that the proof of actual damages may extend to facts that occur and grow out of the injury, even up to the day of the verdict. If so, it is clear the damage is not the cause of the action." And in the case *Howell* v. *Young*, the plaintiff in 1844 contracted with J. Olive and R. Olive to lend them £3000 at interest, the repayment to be secured by a warrant of attorney to confess judgment, and certain mortgages of free hold and leasehold premises; and the defendant, an attorney, was retained by the plaintiff to ascertain whether the warrant of attorney and mortgages were a sufficient security, and he represented to the plaintiff that they were so. In 1820, the interest to that time having been regularly paid, it was discovered that the warrant of attorney and mortgages were not a sufficient security. It was held, "that the misconduct or negligence of the attorney constituted the cause of action, and that the statute of limitations began to run from the time, when the defendant had been guilty of such misconduct, and not from the time when it was discovered that the securities were insufficient."

But the cross-complaint was before the court and an answer was filed to it, and the applicant had upon the trial all the benefit from it, he possibly could have had, if the action had been transferred to the equity side.

The judgment is affirmed.