Jerry C. CHAPMAN *v.* Hubert ALEXANDER

91-33                                          817 S.W.2d 425

Supreme Court of Arkansas
Opinion delivered October 28, 1991

*Gill and Elrod*, by: *Victor A. Fleming*, for appellant.

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, by: *Stephen Bingham*, for appellee.

ROBERT H. DUDLEY, Justice. In June of 1986, Hubert Alexander, an attorney, represented Jerry Chapman in the sale of a business. In July of 1990, more than three (3) years after the sale had been completed, Chapman sued Alexander for an alleged act of legal malpractice which occurred at the time of the sale. Chapman did not allege Alexander concealed the negligent act. Alexander pleaded the statute of limitations as a bar to the action. The trial court granted summary judgment in favor of Alexander. We affirm the summary judgment.

■ Since 1877, it has been our rule that the statute of limitations applicable to a malpractice action begins to run, in the absence of concealment of the wrong, when the negligence occurs, and not when it is discovered. *Riggs* v. *Thomas*, 283 Ark. 148, 671 S.W.2d 756 (1984). Appellant Chapman acknowledges our long line of cases so holding and that they constitute the "general rule." Even so, he asks us to abandon the general rule and retroactively adopt one of the "current trend" cases. Those cases primarily adopt one of three (3) approaches. First, is the "discovery rule." Under this approach, the statute of limitations does not begin to run until the negligent act is discovered or should have been discovered. Second, is the "date of injury" rule. Under this view, the statute of limitations begins to run, not from the occurrence of the negligent act, but rather from the time injury results from the negligent act. Third, is the "termination of employment" rule. Under it, the statute of limitations does not begin to run until the attorney-client, doctor-patient, or other professional-client relationship has ended. *See* Annotation, *When Statute of Limitations Begins To Run Upon Action Against Attorney For Malpractice*, 32 A.L.R.4th 260 (1984). Some of the aforementioned "rules" are based upon statutes rather than case law. *See id.* at 266-67.

In ordinary tort and contract actions, the statute of limitations begins to run upon the occurrence of the last element essential to the cause of action. This is also the case under our traditional rule. The "other rules" postpone the running of the statute of limitations in professional malpractice, that is, give the client a longer period of time in which to sue, because of the special nature of the relationship between the professional and his client. While each of the other approaches has some appeal, we found the most meritorious of the other rules to be the "discovery rule" adopted by the Supreme Court of California in *Neel* v. *Magana*, 6 Cal. 3d 176, 98 Cal. Rptr. 837, 491 P.2d 421 (1971). Still we do not abandon our traditional rule and adopt the "discovery rule."

Our traditional rule has a countervailing fairness about it. First, everyone is treated in the same manner. Second, an abstractor, accountant, architect, attorney, escrow agent, financial advisor, insurance agent, medical doctor, stockbroker, or other such person will not be forced to defend some alleged act of

malpractice which occurred many years ago. The problem with the delay is that his or her records or witnesses may no longer be available. For example, in the oral argument of this case, it was developed that under the "discovery rule" an attorney could be forced to defend the validity of a mortgage 25 to 30 years after the preparation of the instrument, long after his records and witnesses are no longer available.

If this case were limited to deciding which rule was the most fair it would be a much closer case, but there is a good deal more to the issue. In a case identical to the one now at bar, we wrote:

> Counsel for the appellants concede that it has long been the law in Arkansas that the statute of limitations in an action against an attorney for negligence begins to run, in the absence of concealment of the wrong, when the negligence occurs, not when it is discovered by the client. *White* v. *Reagan,* 32 Ark. 281 (1877); *Wright* v. *Langdon,* 274 Ark. 258, 623 S.W.2d 823 (1981). The same rule applies to an action brought against an abstractor for damages resulting from an omission in the abstract of title. *St. Paul Fire & Marine Ins. Co.* v. *Crittenden Abstract & Title Co.,* 255 Ark. 706, 502 S.W.2d 100 (1973). Counsel argue that we should overrule our prior cases, because an injustice occurs when the statute has run before the error is discovered. That may be true, but a countervailing consideration is that the contrary rule would permit the plaintiff to bring suit many years after the damage had actually occurred and at a time when witnesses might no longer be available. *If such a marked change is to be made in the interpretation of statutes that have long been the law, it should be done prospectively by the legislature, not retrospectively by the courts.* [Emphasis added.]

*Riggs* v. *Thomas,* 283 Ark. 148, 149, 671 S.W.2d 756, 757 (1984).

In another identical case, with the exception that it involved an accountant, we wrote:

> Our decisions have settled this limitation question in professional malpractice actions, and our rule is considerably more restrictive than any of the cases cited and relied

on by appellant. In Arkansas malpractice cases, concerning attorneys and physicians, we have consistently held that the statute of limitations begins to run, in the absence of concealment of the wrong, when the negligence occurs, not when it is discovered. *Stroud* v. *Ryan*, 297 Ark. 472, 763 S.W.2d 76 (1989); *Lane* v. *Lane*, 295 Ark. 671, 752 S.W.2d 25 (1988); *Riggs* v. *Thomas*, 283 Ark. 148, 671 S.W.2d 756 (1984). In fact, Arkansas courts have followed this rule, as it pertains to professional malpractice actions, for well over one hundred years. *See White* v. *Reagan*, 32 Ark. 281 (1877) (quoting from *Howell* v. *Young*, 5 Barn. & Cress. 259). That being so, we see no compelling reason why we should adopt a different rule to be used in accounting malpractice cases. Accordingly, since appellee's erroneous advice or negligent conduct occurred in August 1974, appellants' suit filed on September 8, 1981, was clearly beyond the three-year limitation statute. We observed in *Riggs* v. *Thomas, supra, that if such a marked change is to be made in statutes that have long been the law, it should be done by the legislature, not the courts.* [Emphasis added.]

*Ford's Inc.* v. *Russell Brown & Co.*, 299 Ark. 426, 429, 773 S.W.2d 90, 92-93 (1989).

■ We have made it clear that we are not going to retroactively change our rule and that, if it is to be changed, the change must come from the General Assembly. It would be incongruous for us, rather than the legislature, to now change it. More importantly, the issue is one of statutory construction and, since 1877, we have construed our statute under the "traditional rule." Legislative silence after such a long period gives rise to an arguable inference of acquiescence or passive approval of our construction of the statute. Actually, we find even stronger legislative approval. In 1979 the General Assembly amended the medical malpractice statute to provide: "The date of the accrual of the cause of action shall be the date of the wrongful act complained of and no other time." The statute further provides that the above sentence shall control unless the doctor conceals a foreign substance in the patient's body, and then the statute of limitations begins to run when the foreign substance is discovered or should have been discovered. Ark. Code Ann. § 16-114-203(b)

(1987). This legislative expression in the medical malpractice statute is consistent with the way we have long construed the malpractice statute of limitations. We can only conclude we are interpreting the statute as the legislature intends.

There is yet another significant reason we do not retroactively adopt the "discovery rule," "date of injury rule," or "termination of employment rule." Many abstractors, accountants, architects, attorneys, and other similar professionals surely have relied on our traditional and longstanding rule. In doing so, they had no reason to keep records for longer than three (3) years. As a consequence, if we retroactively changed the rule, they might easily have no materials to use in their defense. Similarly, most professional people insure themselves against malpractice suits. The terms of malpractice insurance policies may have changed over the last 25 years, so that a professional person who was insured years ago might not be covered today under a retroactive application of the statute of limitations. The General Assembly is best suited to hold hearings on such issues and determine whether a change, if any, should be made and whether it should be made retroactively, prospectively from the date of the change, or prospectively from some future date which would give all professional people time to acquire adequate insurance under a different statute of limitations.

Accordingly, we decline to retroactively overrule our cases construing the statute of limitations in malpractice actions. Affirmed.

BROWN, J., not participating.