Roger D. FLEMENS and Nancy Flemens
*v.* Glen D. HARRIS

94-245                                                  915 S.W.2d 685

Supreme Court of Arkansas
Opinion delivered February 12, 1996
[Petition for Rehearing denied March 18, 1996.*]

---

* GLAZE, J., would grant.

*Wright, Chaney, Berry & Daniel, P,A.*, by: *Don P. Chaney*, for appellants.

*Wood, Smith, Schnipper & Clay*, by: *Lynn Williams* and *Philip M. Clay*, for appellee.

ANDREE LAYTON ROAF, Justice. This is the second appeal of this case involving a claim of negligence against an insurance agent; the first appeal was dismissed without prejudice pursuant to Ark. R. Civ. P. 54(b). *Flemens* v. *Harris*, 319 Ark. 659, 893 S.W.2d 783 (1995). Appellants Roger and Nancy Flemens appeal from an order granting summary judgment in favor of appellee Glen D. Harris on the basis that the Flemenses' action was barred by the running of the statute of limitations. We affirm.

## Facts

Appellee Glen Harris passed the state examination for insurance agents in June 1988 and opened a Shelter Life Insurance Company office in Dierks, Arkansas. Roger Flemens, a self-employed grocery store and gas station operator, submitted a disability insurance application through appellee's office on August 8, 1988, and was issued a policy by Shelter Life Insurance Company (Shelter). Roger Flemens' wife, appellant Nancy Flemens, was the intended third party beneficiary of the disability insurance policy.

On December 15, 1988, Roger Flemens sustained injuries as a result of a motor vehicle accident. Mr. Flemens made a claim for disability insurance benefits from Shelter and received one payment for the period December 16, 1988, through Decem-

ber 29, 1988. The payment was made on February 7, 1989. On March 21, 1989, Flemens was notified by Shelter that there was "a problem with this matter." Shelter Life Insurance stated that there had been a misrepresentation on the application regarding Flemens' income — the income shown on his tax returns was significantly below that which he claimed on the application form. Subsequently, Roger Flemens' disability benefits were terminated.

Roger and Nancy Flemens filed a complaint against Shelter and Glen Harris on December 13, 1991. The complaint alleged Harris was negligent in handling Roger Flemens' application for disability insurance. The complaint further alleged that the negligence on the part of Harris was imputable to Shelter under the law of agency. In addition, the complaint alleged that Flemens substantially complied with the terms of the policy and, despite demand, Shelter failed to pay benefits due under the policy.

Appellee Harris moved for summary judgment asserting that the three-year statute of limitations barred the Flemenses' action. The trial court found that the applicable statute of limitations for negligence of an insurance agent is three years and begins to run at the time the negligent act occurs, not when it is discovered. The trial court further concluded that the negligence, if any, committed by Harris occurred in August 1988 and the action against Harris was filed in December 1991. Accordingly, the trial court granted separate defendant Glen Harris' motion for summary judgment. The record reflects that Shelter entered into a settlement agreement with the Flemenses and the action against Shelter was dismissed with prejudice.

### Statute of limitations

On appeal, both parties agree that the applicable statute of limitations on actions for the negligence of an insurance agent is three years. The appellants, however, submit that the trial court erred in determining when the applicable three-year period began to run. The appellants assert that the statute of limitations did not begin to run until receipt of the March 21, 1989, letter from Shelter which terminated benefits because this letter represented their first loss, i.e. damage, which was necessary for their tort action to mature.

The appellants rely upon *Midwest Mutual Ins. Co. v. Ark. Nat'l Co.*, 260 Ark. 352, 538 S.W.2d 574 (1976), where this Court concluded the running of the statute of limitations did not commence until an insured first learned it had no insurance coverage. The Arkansas National Company, an independent insurance agency, obtained an assigned risk liability insurance policy for Red Top Cab Company through Farm Bureau Mutual Insurance Company. Arkansas National and Red Top had a standing agreement to delete from coverage taxicabs undergoing repair and to reinstate the coverage upon request. Pursuant to that agreement, on August 11, 1970, Red Top requested one of Arkansas National's agents to reinstate a vehicle under the coverage; however, the agent neglected to reinstate the vehicle.

The vehicle was involved in a collision nine days later, and on May 24, 1971, a suit was instituted against Red Top for injuries resulting from the collision. At that time, Red Top made demand on Farm Bureau to provide it with a defense and to pay any judgment that might be entered; however, Farm Bureau refused. After judgment was entered against it on September 11, 1973, Red Top assigned to Midwest Mutual Insurance Company its "chose in action" against Arkansas National for failure to reinstate insurance coverage, and, on March 29, 1974, Midwest filed suit against Arkansas National. Arkansas National answered and asserted the suit was barred by the three-year statute of limitations.

This Court concluded that Red Top's cause of action accrued on or after May 24, 1971, when it was required to assume the cost of its own defense due to the negligence of Arkansas National. We concluded Arkansas National's negligence in failing to reinstate the insurance coverage did not become tortious as to Red Top until at least some element of damage accrued to Red Top because of the negligence. However, the summary judgment in favor of Arkansas National was affirmed because this Court held that Red Top's claim was not assignable.

In accordance with *Midwest Mutual*, the appellants submit that the statute of limitations in their case did not begin to run until they received the letter dated March 21, 1989, informing them benefits were terminated. The appellants assert that the

statute of limitations begins to run when there is a complete and present cause of action. *See Courtney* v. *First Nat'l Bank*, 300 Ark. 498, 780 S.W.2d 536 (1989); *Corning Bank* v. *Rice, Adm'r*, 278 Ark. 295, 645 S.W.2d 675 (1983).

In response, the appellee cites a legal malpractice case, *Chapman* v. *Alexander*, 307 Ark. 87, 817 S.W.2d 425 (1991), where we stated:

> Since 1877, it has been our rule that the statute of limitations applicable to a malpractice action begins to run, in the absence of concealment of the wrong, when the negligence occurs, and not when it is discovered.

We held that the statute of limitations begins to run upon the occurrence of the last element essential to the cause of action. *Id.*; *see also Wright* v. *Compton, Prewett, Thomas & Hickey*, 315 Ark. 213, 866 S.W.2d 387 (1993). Accordingly, we concluded that the statute of limitations began to run at the time Alexander, an attorney, represented Chapman in the sale of a business. Although the *Chapman* case involved legal malpractice, this Court commented that under our traditional rule:

> an abstractor, accountant, architect, attorney, escrow agent, financial advisor, *insurance agent*, medical doctor, stockbroker, or other such person will not be forced to defend some alleged act of malpractice which occurred many years ago.

(Emphasis supplied.) The appellee also relies upon *Ford's Inc.* v. *Russell Brown & Co.*, 299 Ark. 426, 773 S.W.2d 90 (1989), where we held that the three-year statute of limitations commenced from the date an accountant provided erroneous tax advice even though the assessment of tax deficiency occurred more than three years later. This Court specifically rejected the appellant's contention that, until they were assessed a tax deficiency, they had not sustained an injury.

The appellants' attempt to rely upon *Midwest Mutual* is understandable. However, the ultimate decision in *Midwest Mutual* was based upon the assignability of the action. Although this Court first concluded that the action was not barred by the statute of limitations, it was not necessary to do so in order to determine that the action could not be assigned. Consequently,

although the discussion of the limitation issue in *Midwest Mutual* is extensive, the conclusion reached regarding this issue amounts to dictum. Of equal concern is the rationale employed by the Court in reaching the conclusion that the statute of limitation did not begin to run until the client of the insurance agency had suffered some actual loss or damage. The opinion does not distinguish the work of insurance agents from others who similarly render advice and services, whether they be considered "professional" or not. Nor is there any real discussion of our traditional rule for malpractice actions, as in *Chapman*, although one medical malpractice case is discussed.

In fact, two cases discussed and cited in the *Midwest Mutual* opinion as on point, and clearly relied upon by the court in reaching its conclusion regarding the limitation issue, involved damage to adjoining land resulting from the construction of a culvert, *Chicago, R.I. & P. Ry. Co.* v. *Humphreys*, 107 Ark. 330, 155 S.W. 127 (1916), and damage to property resulting from construction of a power plant, *Brown* v. *Arkansas Central Power Co.*, 174 Ark. 177, 294 S.W. 709 (1927). *See Midwest Mutual, supra,* (quoting *Faulkner* v. *Huie*, 205 Ark. 332, 168 S.W.2d 834 (1943)). We thus conclude that the issue raised in the instant case is not controlled by *Midwest Mutual*, and should not be.

The appellee's reliance upon *Chapman, supra,* presents a similar problem, because the comment in *Chapman* that its decision was applicable to insurance agents is also dictum; the running of the statute of limitations for attorney malpractice was the only issue before the court. However, in *Chapman*, the traditional rule that the statute of limitations applicable to malpractice actions begins to run, absent concealment of the wrong, when the negligence occurs, is thoroughly discussed, and the rationale behind it is clearly appropriate to an insurance agent. Certainly, damages resulting from the negligent acts of insurance agents, like those of accountants and attorneys, will seldom occur at the time the negligent act is committed and often will only surface upon the occurrence of some subsequent event. The injury or damage from a negligently prepared will does not arise until after the testator has died. The negligence of the insurance agent in *Midwest Mutual* and in the instant case did not result in damages until claims were presented and coverage denied.

The appellants seek to distinguish insurance agents from the other vocations listed in *Chapman*, by characterizing them as "generally not professional." Even if that be the case, we are not prepared to suggest, as appellants argue, that because insurance agents are not considered "professional," and do not render "professional" services, they should therefore be subject to, in effect, a longer statute of limitations than "true" professionals. Perhaps a better argument could be made for the opposite view. Also, the cases relied upon by the appellants in support of this distinction merely hold that an insurance agent does not have a duty to advise an insured with respect to different coverages. *See Scott-Huff Ins. Agency* v. *Sandusky*, 318 Ark. 613, 887 S.W.2d 516 (1994); *Stokes* v. *Harrell*, 289 Ark. 179, 711 S.W.2d 755 (1986). Insurance agents are not characterized as professional or non-professional, nor are their services compared with or distinguished from those of any other professions in reaching the holdings in *Scott-Huff* and *Stokes*. We are not persuaded that these decisions have any utility in the analysis of the limitations issue before us.

■ We hold that the statute of limitations for an insurance agent commences at the time the negligent act occurs, in keeping with our traditional rule in professional malpractice cases. However, in doing so, we recognize the harshness of this rule to the clients of not only insurance agents, but also of attorneys, accountants, and others who may avail themselves of this rule in defending against malpractice actions. In the instant case, the appellant participated in the preparation of his application for insurance and knew that his income had been inaccurately stated. He further had two and one half years after suffering damage from the appellee's negligence to bring legal action against him. The facts of *Ford's Inc.*, *supra* present a more dramatic example of how dire the consequences of our traditional rule can be to injured persons; there, the damages did not result until *after* the statute of limitations had run.

In *Chapman*, we discussed the "current trend" cases from other jurisdictions, which have adopted several approaches more favorable to the injured party — the "discovery rule," the "date of injury rule," and the "termination of employment rule." We suggested then that any change to our long standing rule should come from the General Assembly, and we do so once more.

*Retroactive application*

The appellants submit that if this Court holds the *Chapman* case and its reference to insurance agents to be the controlling precedent, a retroactive application of new law will result. The *Chapman* opinion was issued on October 28, 1991, and appellants assert it is illogical and unfair for its application to result in the running of the three year limitation period in August, 1991, two months before *Chapman* was decided.

■ We have long held that our decisions are applied retrospectively — a decision of the court, when overruled, stands as though it had never been. *See Baker* v. *Milam*, 321 Ark. 234, 900 S.W.2d 209 (1995). Appellants, however, mistakenly rely upon the decision in *Wiles* v. *Wiles*, 289 Ark. 340, 711 S.W.2d 789 (1986), as a deviation from this practice. In *Wiles*, we declined to permit retroactive application of a decision allowing for division of military retirement pay as marital property to a divorce and property settlement finalized nearly four years earlier. We determined that the previous holdings which did not allow such division were justifiably relied upon, and that the doctrine of *res judicata* would mandate against the reopening of cases already decided, a significant consideration that is not present in the instant case. Furthermore, as we said in *Chapman*, our limitation rules regarding malpractice actions have been applicable since 1877. *See White* v. *Reagan*, 32 Ark. 281 (1877). It is the traditional rule that we today hold to be controlling. The case of *Ford's Inc.* v. *Russell Brown & Co.*, *supra*, was decided in 1989 upon the same rule as *Chapman*, and it also conflicts with the analysis in *Midwest Mutual*. Indeed, the dissent in *Ford's Inc.* made the same argument the appellants now make in the instant case.

■ We find there has been no change in the applicable rule and thus no "retroactive" application, because the decision in *Midwest Mutual* cannot be viewed as a "line of precedents" which has been relied upon. The trial court correctly applied the decisional law of the Court as it existed when it decided appellant's case. *Baker* v. *Milam*, *supra*.

Affirmed.

GLAZE and CORBIN, JJ., dissent.

TOM GLAZE, Justice, dissenting. In *Midwest Mutual Ins. Co. v. Ark. Nat'l Co.*, 260 Ark. 352, 538 S.W.2d 574 (1976), this court concluded that, where an insurance agent neglected to reinstate the insured's vehicle coverage, the statute of limitations commenced when the insured first learned he had no coverage and not the date the agent failed to obtain it. Applying that rule to the situation now before our court, Roger and Nancy Flemens, the insureds, were first notified on March 21, 1989 that their insurance agent had failed in August 1988 to obtain the disability insurance coverage they had requested. Using the March 21, 1989 date and the three-year statute of limitations, the Flemens's complaint, alleging negligence on their agent's part, was timely filed on December 13, 1991.

The majority opinion concedes that the Flemenses, in contending their action against their insurance agent was filed timely, understandably relied on this court's decision in *Midwest*, but the majority court then proceeds to offer reasons why the *Midwest* decision should not decide this case. The majority opinion falls short of overruling that decision, but it might as well have done so — at least as to the *Midwest* court's extensive discussion of the three-year limitations statute and its application to an insurance agent's negligent acts.

Primarily, the majority court suggests *Midwest's* discussion of the three-year statute of limitations issue was purely dictum and for that reason, is not precedent here. I strongly disagree! In *Midwest*, Arkansas National had a standing agreement to insure Red Top's taxicabs effective the same day Red Top requested coverage. Arkansas National and its agent neglected to follow Red Top's request made on August 11, 1970, and as a consequence, one of Red Top's taxicabs was uninsured when it collided with a motorcycle on August 20, 1970. Robert Bratton was driving the motorcycle which was owned by Archie Lee Lowe. On May 24, 1971, Bratton and Lowe sued Red Top for personal injuries and property damage. Red Top subsequently filed a third-party complaint against its insurance agent, Arkansas National, alleging it had negligently failed to obtain insurance per the parties' agreement and Arkansas National's negligence had forced Red Top to defend against Bratton's and Lowe's lawsuit.

The trial court in *Midwest* dismissed Arkansas National from the lawsuit, but the remaining claims were tried, resulting in a verdict against Red Top, with Bratton and Lowe obtaining a judgment in the sum of $6,850. Afterwards, Red Top assigned to Midwest Mutual Insurance company, its "chose in action" against Arkansas National, representing Red Top's action against Arkansas National for failing to obtain the insurance coverage Red Top had requested. Based upon that assignment, Midwest filed suit against Arkansas National and its agent for the $6,850 paid Bratton and Lowe. Arkansas National conceded its agent had been negligent, but argued (1) the statute of limitations had run and (2) Red Top's assignment to Midwest was invalid. The trial court granted Arkansas National's motion for summary judgment, holding Red Top's cause of action against Arkansas National was statutorily barred by the three-year limitations, since Red Top's action accrued on August 11, 1970 — the date Arkansas National negligently failed to obtain Red Top's vehicle insurance coverage.

On appeal of the trial court's ruling, this court held the trial court was wrong in concluding Midwest Mutual's cause of action was barred by the statute of limitations. In fact, the *Midwest* court stated that "the limitations question on appeal boiled down to when Red Top's cause of action accrued against its insurance agent." Most of the court's opinion in *Midwest* sets out the cases and rationale it considered when deciding the trial court erred in ruling Red Top's (and therefore its assignee's, Midwest Mutual) cause of action against Arkansas National was procedurally barred by the limitations statute. Although it rejected the trial court's statute of limitations ruling, the supreme court affirmed the lower court on the second defense Arkansas National had argued at trial — Red Top's assignment to Midwest Mutual was invalid.

As is readily discernable from the above, the *Midwest* court had before it the trial court's ruling that Midwest Mutual's cause of action was barred by the three-year statute of limitations because its action commenced on the date its insurance agent negligently failed to obtain the requested insurance coverage. That legal issue was before this court on appeal, and the court addressed it, lest that trial court's erroneous ruling on the issue be perceived as valid by that trial court and possibly other

trial courts and parties. Because it was essential for the court in *Midwest* to decide the limitations issue, that court's holding is binding authority and controls the case now before us.

The remaining remarks in the majority opinion are largely based on the erroneous assumption that the *Midwest* decision is dicta and not controlling here. For that reason alone, the majority court's other points can be summarily discarded. However, I mention one matter briefly. The majority court conceives of no reason why professionals, such as attorneys, doctors and certified public accountants, should be considered differently from insurance agents when construing and applying the three-year statute of limitations. While much can be said and argued to counter the majority opinion on this point, it is sufficient to say that *Midwest* was decided in 1976, and the General Assembly could have changed that case law so as to treat insurance agents under the same limitations rationale or rule utilized in malpractice actions against "professionals." For two decades, the General Assembly has been silent on this subject. Nor, until today's decision, has this court refused to follow *Midwest*.

For the foregoing reasons, I respectfully disagree with the majority opinion, and would reverse this case.

CORBIN, J., joins this dissent.