**Dorothy Jean RICE, Winston Lee Rice, Jr., Dianne Anderson, and Gay Roberts, Appellants,**

v.

**Duncan RAGSDALE and Gerald Coleman, Appellees.**

No. CA 08–186.

Court of Appeals of Arkansas.

Feb. 11, 2009.

Blair & Stroud, by: H. David Blair and Michelle C. Huff, Batesville, for appellants.

Wright, Lindsey & Jennings, LLP, by: Edwin L. Lowther, Jr. and Gary D. Marts, Jr., Little Rock, for appellee Gerald Coleman.

Duncan E. Ragsdale, Jr., pro se appellee.

WAYMOND M. BROWN, Judge.

This appeal is from a judgment on the pleadings entered in a legal-malpractice case that appellants Dorothy Rice, Winston Rice, Jr., Dianne Anderson, and Gay Roberts filed against appellees, attorneys Duncan Ragsdale and Gerald Coleman, who represented them in a previous medical-malpractice case following the June 29, 2000 death of Winston Rice, Sr. We affirm the judgment for appellees.

On January 16, 2002, appellees mistakenly filed the medical-malpractice action without first causing a personal representative to be appointed or joining all of the wrongful-death beneficiaries. The statute of limitations on the medical claims ran on June 29, 2002, and on May 10, 2004, a defendant filed an answer challenging appellants' capacity to sue. The defendants then filed motions for summary judgment, which the trial court granted on September 30, 2004. On June 23, 2005, the supreme court affirmed the summary judgment. *Rice v. Tanner*, 363 Ark. 79, 210 S.W.3d 860 (2005).

Appellants sued appellees for legal malpractice in this action on May 3, 2006, asserting claims for negligence and under Ark.Code Ann. § 16–22–306 (Repl.1999), which states that, if a lawsuit is dismissed on account of the negligence of an attorney, the attorney shall be liable for all damages his client may have sustained by the dismissal or any other neglect of duty by the attorney. Appellees moved to dismiss on the basis of the three-year statute of limitations, Ark.Code Ann. § 16–56–105 (Repl.2005). Appellants filed an amended complaint adding a claim for breach of fiduciary duty and alleging that appellees' fraudulent concealment had tolled the limitations period. Appellees then filed motions for judgment on the pleadings on the basis of the statute of limitations.

On November 5, 2007, the circuit court granted the motion for judgment on the pleadings, making the following findings:

4. The Court finds that the claim of negligence asserted in Count I of the complaint is governed by the three-year statute of limitations, which statute ran no later than June 29, 2005, three years after the last day upon which the underlying action could have been timely commenced. The Court therefore finds, based upon the allegations of Plaintiff's First Amended Complaint, that Defendants are entitled as a matter of law to a judgment on the claim of negligence asserted in Count I of Plaintiffs' First Amended Complaint.

. . . .

6. The Court finds that Plaintiffs' cause of action under Ark.Code Ann. § 16–22–306 is governed by the three-year, rather than the five-year, statute of limitations and that the statute of limitations as to Defendants' statutory liability under Ark.Code Ann. § 16–22–306 ran no later than June 29, 2005, three years after the last day the medical malpractice action could have been properly instituted.

. . . .

8. The Court finds that Plaintiffs' claim based upon the allegation of breach of fiduciary duty is governed by the same statute of limitations as that of a claim based upon Defendants' alleged negligence and that the statute of limitations on both claims expired on the 29th day of June, 2005, or three years from the last date on which the underlying medical action could have been commenced.

. . . .

10. The Court finds that under the facts alleged in Count IV of Plaintiffs' First Amended Complaint, Plaintiffs had an independent duty to investigate the accuracy of Defendants' assurance, and that their failure to do so bars their claim that the three-year statute of limitations was tolled by Defendants' alleged fraudulent concealment.

11. The Court further finds that on the face of Plaintiffs' First Amended Complaint, all claims against Defendants, arising out of Defendants' handling of the underlying medical malpractice case, ran on June 29, 2005. Because Plaintiffs' First Amended Complaint was filed herein on May 3, 2006, it is time-barred. Accordingly Defendants' motion for judgment on the pleadings is granted as to all claims asserted in Plaintiffs' First Amended Complaint and this case should be and hereby is ordered dismissed with prejudice.

Appellants filed a timely appeal on November 28, 2007.

■ Motions for judgments on the pleadings are not favored by courts. *LandsnPulaski, LLC v. Ark. Dep't of Corrections*, 372 Ark. 40, 269 S.W.3d 793 (2007). Such a judgment should be entered only if the pleadings show on their face that there is no defense to the suit. *Id.* When considering the motion, the court views the facts alleged in the complaint as true and in the light most favorable to the party seeking relief. *Id.*

■ In their first point, appellants ask us to hold that the trial court erred in ruling that the expiration of the limitations period for the medical-malpractice case marked the commencement of the statutory period as to their negligence claims against appellees. In making this request, they urge us to overrule supreme court precedent dating back to 1877. We must, however, follow the precedent set by the supreme court, and are powerless to overrule its decisions. *Brewer v. State*, 68 Ark.App. 216, 6 S.W.3d 124 (1999). Further, under the doctrine of *stare decisis*, the appellate courts are bound to follow prior case law. *Chamberlin v. State Farm Mut. Auto. Ins. Co.*, 343 Ark. 392, 36 S.W.3d 281 (2001). The policy of *stare decisis* is designed to lend predictability and stability to the law. *Id.* It is well settled that precedent governs until it gives a result that is so patently wrong or manifestly unjust that a break becomes unavoidable. *Id.* The test is whether adherence to the rule would result in great injury or injustice. *Id.* This is not such a case.

■ The limitations period for legal malpractice actions, set forth in Arkansas Code Annotated § 16–56–105(3) (Repl. 2005), is three years. *Delanno, Inc. v. Peace*, 366 Ark. 542, 237 S.W.3d 81 (2006). The same statute applies to claims for negligence, fraud, and breach of fiduciary duty. *Chalmers v. Toyota Motor Sales, USA, Inc.*, 326 Ark. 895, 935 S.W.2d 258 (1996); *Alexander v. Flake*, 322 Ark. 239, 910 S.W.2d 190 (1995). Absent concealment, the statute of limitations begins to run upon the occurrence of the wrong, *Delanno, Inc. v. Peace, supra*, and not when it is discovered. *Stoltz v. Friday*, 325 Ark. 399, 926 S.W.2d 438 (1996). This

rule applies even when there is an interval between the allegedly tortious act and the damage suffered by the plaintiff. *See, e.g., Moix–McNutt v. Brown*, 348 Ark. 518, 74 S.W.3d 612 (2002). The "occurrence rule" has remained the law since 1877, even though the supreme court has been invited to change it on numerous occasions. *Stoltz v. Friday, supra*. The supreme court has refused to adopt an alternative to the traditional "occurrence rule" in the following cases: *Moix–McNutt v. Brown, supra; Ragar v. Brown*, 332 Ark. 214, 964 S.W.2d 372 (1998); *Stoltz v. Friday, supra; Morris v. McLemore*, 313 Ark. 53, 852 S.W.2d 135 (1993); *Chapman v. Alexander*, 307 Ark. 87, 817 S.W.2d 425 (1991); and *Riggs v. Thomas*, 283 Ark. 148, 671 S.W.2d 756 (1984).

 Appellants ask us to reject the "occurrence rule," and adopt an alternative rule known as the "injury rule" or "damage rule," because their cause of action was not yet complete when the alleged malpractice occurred. They contend that, until they sustained actual, not simply nominal, damages, all of the elements of their cause of action were not present. They argue that the earliest event that completed their cause of action was when their capacity to sue was put in issue in the wrongful-death action, May 10, 2004, which was within three years of the filing of the complaint in this action. They are incorrect, because when the statute of limitations on their medical-malpractice claims ran on June 29, 2002, they lost a valuable property right. *See Bunt v. Bunt*, 294 Ark. 507, 744 S.W.2d 718 (1988).

There are at least three common approaches taken to determine when a cause of action for legal malpractice accrues. One current trend is the "termination of employment" rule, whereby the statute of limitations does not begin to run until the attorney-client relationship has ended; another is the "damage rule" or "injury rule" (which also has a variation termed the "discovery rule"), under which the statute begins to run from the time injury results from the negligent act. *Chapman v. Alexander, supra*. Under the "occurrence rule," the malpractice action (like ordinary tort and contract actions) accrues when the last element essential to the cause of action occurs, unless the attorney actively conceals the wrongdoing; the rationale is to prevent attorneys from having to defend stale claims, to preserve evidence, and to treat all plaintiffs equally. *Id*. Our supreme court has acknowledged the appeal of the other approaches, but concluded that our courts' traditional rule, established in *White v. Reagan*, 32 Ark. 281 (1877), has a countervailing fairness about it:

> First, everyone is treated in the same manner. Second, an abstractor, accountant, architect, attorney, escrow agent, financial advisor, insurance agent, medical doctor, stockbroker, or other such person will not be forced to defend some alleged act of malpractice which occurred many years ago. The problem with the delay is that his or her records or witnesses may no longer be available. For example, in the oral argument of this case, it was developed that under the "discovery rule" an attorney could be forced to defend the validity of a mortgage 25 to 30 years after the preparation of the instrument, long after his records and witnesses are no longer available.

*Chapman v. Alexander*, 307 Ark. at 88, 817 S.W.2d at 426.

The supreme court went further to explain that, if a change in this rule is to be made, it must come from the General Assembly:

> It would be incongruous for us, rather than the legislature, to now change it.

More importantly, the issue is one of statutory construction and, since 1877, we have construed our statute under the "traditional rule." Legislative silence after such a long period gives rise to an arguable inference of acquiescence or passive approval of our construction of the statute. Actually, we find even stronger legislative approval. In 1979 the General Assembly amended the medical malpractice statute to provide: "The date of the accrual of the cause of action shall be the date of the wrongful act complained of and no other time." The statute further provides that the above sentence shall control unless the doctor conceals a foreign substance in the patient's body, and then the statute of limitations begins to run when the foreign substance is discovered or should have been discovered. Ark.Code Ann. § 16–114–203(b) (1987). This legislative expression in the medical malpractice statute is consistent with the way we have long construed the malpractice statute of limitations. We can only conclude we are interpreting the statute as the legislature intends.

There is yet another significant reason we do not retroactively adopt the "discovery rule," "date of injury rule," or "termination of employment rule." Many abstractors, accountants, architects, attorneys, and other similar professionals surely have relied on our traditional and longstanding rule. In doing so, they had no reason to keep records for longer than three (3) years. As a consequence, if we retroactively changed the rule, they might easily have no materials to use in their defense. Similarly, most professional people insure themselves against malpractice suits. The terms of malpractice insurance policies may have changed over the last 25 years, so that a professional person who was insured years ago might not be covered today under a retroactive application of the statute of limitations. The General Assembly is best suited to hold hearings on such issues and determine whether a change, if any, should be made and whether it should be made retroactively, prospectively from the date of the change, or prospectively from a future date which would give all professional people time to acquire adequate insurance under a different statute of limitations.

307 Ark. at 90–91, 817 S.W.2d at 427.

Appellants assert that the supreme court has, in fact, *not* followed the "occurrence rule" in *Wright v. Compton, Prewett, Thomas & Hickey,* 315 Ark. 213, 866 S.W.2d 387 (1993); *Pope County v. Friday, Eldredge & Clark,* 313 Ark. 83, 852 S.W.2d 114 (1993); and *Stroud v. Ryan,* 297 Ark. 472, 763 S.W.2d 76 (1989). They are incorrect; the supreme court expressly rejected this argument in *Ragar v. Brown, supra; Stoltz v. Friday, supra;* and *Goldsby v. Fairley,* 309 Ark. 380, 831 S.W.2d 142 (1992). Accordingly, we affirm on this point.

█ In their second point, appellants argue that the circuit court erred in applying the "occurrence rule" to their claims brought under Ark.Code Ann. § 16–22–306. They contend that, in enacting this statute, the General Assembly intended to create a new and separate cause of action, which would not be complete until the dismissal of their medical-malpractice case, not when the attorneys' alleged negligence, occurred. This question has not yet been addressed by the supreme court. Arkansas Code Annotated § 16–22–306 provides:

If any suit in any court of record in this state is dismissed on account of the negligence of any attorney at law, or for his nonattendance at the court without having a just and reasonable excuse for

such absence, it shall be at the costs of the attorney at law. Such attorney at law shall be liable for all damages his client may have sustained by the dismissal or by any other neglect by the attorney at law of his duty, in an action in any court within this state having jurisdiction thereof.

This statute does not add anything to a common-law negligence action. However, we need not decide whether the legislature intended to create a new cause of action, because it would make no difference to the outcome of this case.

Section 16–22–306 does not state which statute of limitations will apply. As discussed above, the statute of limitations applicable to negligence cases in general also applies to attorney-malpractice cases, and the supreme court has interpreted section 16–56–105 as incorporating the "occurrence rule." It is well-settled that any interpretation of a statute by the supreme court subsequently becomes a part of the statute itself. *Pifer v. Single Source Transp.*, 347 Ark. 851, 69 S.W.3d 1 (2002). The General Assembly is presumed to be familiar with the supreme court's interpretations of its statutes, and if it disagrees with those interpretations, it can amend the statutes. *Id.* Without such amendments, the supreme court's interpretations of the statutes remain the law. *Id.* The General Assembly's silence over a long period gives rise to an arguable inference of acquiescence or passive approval to the court's construction of the statute. *Chamberlin v. State Farm Mut. Auto. Ins. Co.*, 343 Ark. 392, 36 S.W.3d 281 (2001). It will not be presumed that the legislature intended to require the court to pass again upon a subject where its intent is not expressed in unmistakable language. *Colburn v. State*, 352 Ark. 127, 98 S.W.3d 808 (2003).

Sections 16–22–306 and 16–56–105 should be construed together. It is the appellate court's duty, if possible, to reconcile our state's statutes to make them consistent, harmonious, and sensible. *Darr v. Bankston*, 327 Ark. 723, 940 S.W.2d 481 (1997). When construing any statute, the statute is placed beside other statutes relevant to the subject matter in question so that its meaning and effect can be derived from the combined whole. *Williams v. Harmon*, 67 Ark.App. 281, 999 S.W.2d 206 (1999). With these considerations in mind, we believe that the legislature did not intend to abolish the "occurrence rule" for claims brought under section 16–22–306 and also affirm on this issue.

In their third point, appellants contend that, as their attorneys, appellees had a fiduciary duty to advise them that the statute of limitations was running on any claims they had against appellees after the "fatal flaw in the medical case came to light...." Appellants contend that appellees' failure to do so, when the lack-of-capacity issue was raised in the medical-malpractice case on May 10, 2004, amounted to self-dealing. They also argue that appellees' failure to disclose this information was evidence of an intent to conceal, which would toll the statute of limitations. We will address the tolling question in the next point.

A person standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of the duty imposed by the relationship. *See Cherepski v. Walker*, 323 Ark. 43, 913 S.W.2d 761 (1996). There is no dispute that appellees stood in that capacity when representing appellants in the previous lawsuit. *See Allen v. Allison*, 356 Ark. 403, 155 S.W.3d 682 (2004). However, appellants have not cited any authority that supports their position nor

have we found any that would expand the scope of an attorney's fiduciary duty to his client in such a way. We therefore affirm on this point.

In their last point, appellants argue that appellees' assurances that the trial court's decision in the medical-malpractice case was wrong and would be reversed on appeal, and their failure to inform appellants that the limitations period was running on any claims they might have against appellees, amounted to fraud sufficient to toll the statute of limitations. Fraud suspends the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers the fraud or should have discovered it by the exercise of reasonable diligence. *Delanno, Inc. v. Peace, supra.* In order to toll the statute of limitations, the fraud perpetrated must be concealed. *Id.* The elements of fraud are (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *Id.* In some situations, the law imposes upon a party a duty to speak rather than to remain silent in respect of certain facts within his knowledge, and the failure to speak is the equivalent of fraudulent concealment and amounts to fraud just as much as an affirmative falsehood. *Floyd v. Koenig,* 101 Ark.App. 230, 274 S.W.3d 339 (2008). The supreme court has held that this rule is applicable under special circumstances, such as a confidential relationship. *Berkeley Pump Co. v. Reed–Joseph Land Co.,* 279 Ark. 384, 653 S.W.2d 128 (1983).

Even if the allegations in appellants' complaint were true, appellees' representations about their chances on appeal did not amount to misrepresentations of *fact.* Constructive fraud requires that material misrepresentations of fact be made. *South County, Inc. v. First W. Loan Co.,* 315 Ark. 722, 871 S.W.2d 325 (1994). Further, the misrepresentation must relate to a past event or a present circumstance, not a future event. *Id.* As a general rule, fraud cannot be predicated upon misrepresentations as to matters of law, nor upon opinions on questions of law based on facts known to both parties. *Pambianchi v. Howell,* 100 Ark.App. 154, 265 S.W.3d 788 (2007). Additionally, in the context of legal-malpractice cases, it is clear that, not only must there be fraud, but the fraud must be furtively planned and secretly executed so as to keep the fraud concealed. *Delanno, Inc. v. Peace, supra.* Though the question of fraudulent concealment is usually one of fact, when there is no evidentiary basis for a reasonable difference of opinion, a trial court may resolve the question as a matter of law. *Id.* Also, if a plaintiff, by the exercise of reasonable diligence, might have detected the fraud, he is presumed to have had reasonable knowledge of it, and the suspension ceases as of the date it should have been discovered. *Id.*

The supreme court addressed this subject in *Delanno, Inc. v. Peace, supra:*

In the instant case, attorney Peace made a representation to Delanno that conflicted with the information that Delanno had received from the State; at that point, Delanno was on notice that either his attorney or the State was incorrect, but he made no effort to contact the State to investigate the situation any further. As stated above, if a plaintiff, by the exercise of reasonable diligence, might have detected the fraud, he is presumed to have had reasonable knowledge of it. [*O'Mara v.*

*Dykema,* 328 Ark. 310, 942 S.W.2d 854 (1997) ]; *see also Curry v. Thornsberry,* 354 Ark. 631, 128 S.W.3d 438 (2003); *Alexander v. Flake,* 322 Ark. 239, 910 S.W.2d 190 (1995) (where the appellant did not fulfill his duty to exercise reasonable diligence in examining the disputed agreements or in reading the materials provided to him, he could not avail himself of the benefit of tolling based on fraudulent concealment). Here, Delanno failed to exercise reasonable diligence; had he done so, he could have detected the alleged fraud. His failure to do so triggers the presumption that he had reasonable knowledge of the fraud. Consequently, the trial court did not err in determining, as a matter of law, that fraudulent concealment did not toll the statute of limitations.

Delanno also argues that because the attorney stands in a fiduciary relationship to his client, the client should be able to rely without qualification upon the statements of the attorney, and to hold otherwise would undermine the fiduciary duties owed by lawyers to their clients. The acceptance of this argument would unduly restrict the applicability of the statute of limitations to legal malpractice actions based on misstatements by attorneys. We are unwilling to say that the fiduciary duty owed by an attorney to his client eliminates the client's duty to exercise reasonable diligence in analyzing the accuracy of the attorney's statements. Clients cannot be absolved of all responsibility for testing the veracity of statements made by their lawyers. In the present case, the appellant received information from an authoritative source which directly contradicted the representations made by the appellees. In such a situation, it was incumbent upon the appellant to attempt to reconcile the contradiction by

some action other than obtaining a repetition of the assurances given by the appellees. Further inquiries, such as asking for proof of a tax clearance letter from either its attorneys or the State, would have alerted Delanno to the severity of the problem, but appellant took no further action for approximately three years. For the foregoing reasons, we hold that in these particular circumstances, the appellant's failure to make further inquiry falls below the standard of reasonable diligence.

366 Ark. at 548–49, 237 S.W.3d at 86–87.

Appellants received information from an authoritative source that directly contradicted the representations made by appellees when the medical negligence case was dismissed by the trial court, and, therefore, it was incumbent upon appellants to reconcile the contradiction by doing something other than accepting assurances by appellees. Thus, the statute of limitations on all of appellants' claims ran before they filed their complaint against appellees, and the circuit court did not err in its holding on this point.

Affirmed.

PITTMAN and HART, JJ., agree.